No. 46,955

MICHAEL A. STREFF, *Appellant*, v. GOODYEAR TIRE AND RUBBER COMPANY OF KANSAS, INC., and AETNA CASUALTY AND SURETY COMPANY, *Appellees.*

(508 P. 2d 495)

Opinion filed April 7, 1973.

*L. J. Grant*, of Topeka, was on the brief for the appellant.

*James E. Benfer*, of Fisher & Benfer, Chartered, of Topeka, and *David L. McLane*, of the same firm were on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal by the claimant in a workmen's compensation case.

Basically two questions are presented: ( *a* ) Whether there is any substantial, competent evidence to support the findings of the trial court concerning the nature and extent of the claimant's disability, and ( *b* ) whether a payment of $1,100 by the respondent's insurance carrier to the claimant was properly credited against the amount of the award.

The claimant suffered an accidental injury in the course of and arising out of his employment with the respondent, Goodyear Tire

and Rubber Company, on September 19, 1968. He was seen by Dr. Cavanaugh, the plant physician, and was subsequently referred to Dr. Robert R. Payne an orthopedic surgeon in Topeka, Kansas. Dr. Payne first saw the claimant in October 1968, and treated him until July of the following year for an injury *to his elbow.* On July 1, 1969, Dr. Payne released the claimant with a "10% permanent impairment of the upper left extremity due to the elbow."

In July 1970, the claimant was examined by Dr. Alexander Lichtor, an orthopedic surgeon. The results of Dr. Lichtor's examination were submitted in a deposition taken on behalf of the claimant. Dr. Lichtor testified that the claimant's condition was a result of the accidental injury he suffered in September 1968, and the doctor found the claimant suffered a general bodily disability therefrom of 15%. His diagnosis of the claimant's condition was that of a "strain to the neck, left elbow and shoulder." Dr. Lichtor indicated the claimant's disability rating was based on the subjective complaints of the claimant. Also, the doctor indicated that while he had examined the claimant on July 17, 1970, his report was not prepared until January 18, 1971. He stated that his report was based on his file but he admitted that his file notes did not contain a disability rating. When asked to rate the claimant's elbow separately, disregarding his other alleged complaints, Dr. Lichtor indicated that he felt he would rate just the elbow as "ten to fifteen per cent".

The claimant was examined on behalf of the appellees by Dr. Joseph Gendel, an orthopedic surgeon in Topeka, Kansas. Dr. Gendel examined the claimant in March 1971. He found nothing wrong with the claimant's shoulder, noted no complaints regarding his neck, and indicated that the claimant may have a "10 to 15% of partial permanent loss of use of the left upper arm as a result of a sprained elbow."

At the time of his injury, the claimant was working at a job which required him to load tires onto a rack. This involved lifting rather heavy weights and swinging or throwing them to a considerable height. Prior to this job the claimant had worked at the Goodyear Plant for nearly four years, but had been engaged in less strenuous jobs. Immediately prior to his job at the time of the accident he worked at a desk job for Goodyear. Prior to his employment with Goodyear he had been an insurance salesman, and after his termination at Goodyear in late 1970 he found employment as a security salesman for the Columbian Securities Company.

The original hearing was held before examiner Thomas E. Wright on August 13, 1970, and an award was rendered by examiner Wilburn Dillon on July 23, 1971. Among the issues before the examiner at the time the case was submitted were the nature and extent of the claimant's disability and the amount of compensation to which he was entitled, if any. Examiner Dillon reviewed the evidence, including the claimant's testimony and the reports and depositions of Drs. Payne, Lichtor and Gendel, and found that the claimant, after suffering a period of temporary total disability, was left with a 15% permanent partial loss of use of the left forearm. With respect to the amount of compensation to which the claimant was entitled, the examiner found:

"There is due and owing the claimant 15 weeks of temporary total compensation of $735.00 and 29.25 weeks permanent partial disability of the left arm, all at the rate of $49.00 per week or a total of $2168.25 less the compensation heretofore paid by respondent and its insurance carrier in the amount of $735.00, leaving the balance of $1433.25 which is due and owing in one lump sum."

With respect to the amount of compensation which had already been paid to the claimant, the record indicates that in addition to various temporary total payments which were made to the claimant, he received a payment of $1,100 from the respondent and its insurance carrier on August 4, 1969. The examiner noted that he was not certain as to the precise nature of this payment. There is no question that the payment of $1,100 was made to the claimant and that it was made by the respondent's insurance carrier. This matter has been stipulated to by claimant's counsel. The record further indicates that the subject payment was the result of an attempted settlement of the claimant's claim. The payment, which was made by a draft dated August 4, 1969, states on its face that the $1,100 was "in satisfaction of all claims 10% of arm." The date of loss noted on the draft was September 19, 1968, which was the date of the claimant's alleged injury.

In July 1971, the claimant requested a director's review of the examiner's award pursuant to the provisions of K. S. A. 44-551, as amended. The review was granted, and on November 4, 1971, the director entered an order sustaining the examiner's finding that the claimant suffered a 15% permanent partial loss of use to his arm as per the "schedule", and further approved the amount of compensation awarded. The director modified the award, however, with respect to the amount of credit to be given the appellees herein for payments made prior to the date of the award. The

examiner's award, of course, allowed a credit in the amount of $735 for payments already made. The director ordered that the appellees herein be given an additional credit in the amount of $1,100 for the payment to the claimant of August 4, 1969.

The claimant appealed the director's order to the Shawnee County District Court, citing as issues the nature and extent of the claimant's disability, and the propriety of the $1,100 credit ordered by the director. On April 28, 1972, the district court simply adopted in full the findings and award of the workmen's compensation director. Appeal has been duly perfected by the claimant from this order.

The claimant takes issue with the trial court's finding that he suffered a scheduled injury to his left arm, i. e., a 15% loss of use thereof. It has been the claimant's contention throughout that compensation should be based on a general bodily disability rating of 15%, as per his doctor's report. (Citing *Jackson v. Stevens Well Service*, 208 Kan. 637, 493 P. 2d 264.)

On appeal of a workmen's compensation case, the jurisdiction of the Supreme Court is limited to consideration of questions of law; whereas, regarding questions of fact, the record is reviewed to determine whether or not it contains substantial, competent evidence to support the district court's finding, and in so doing, this court reviews and considers all evidence in the light most favorable to the prevailing party below. If the finding of the district court is supported by substantial, competent evidence, the finding is conclusive and will not be disturbed on appeal. (*Atwell v. Maxwell Bridge Co.*, 196 Kan. 219, 409 P. 2d 994; *Schmidt v. Jensen Motors, Inc.*, 208 Kan. 182, 490 P. 2d 383; and authorities cited in these cases.)

In this case the examiner found the claimant sustained a compensable injury on September 19, 1968, resulting in temporary total disability of the claimant from January 1, 1969, to April 16, 1969, representing 15 weeks at the rate of $49 per week or the sum of $735. From September 19, 1968, to January 1, 1969, and again from April 16, 1969, forward, claimant was fully employed. The examiner further found that the claimant sustained a 15% permanent partial loss of use of the left arm for which he was entitled to compensation at the rate of $49 for the remaining 29.25 weeks in the amount of $1,433.25.

The Kansas Workmen's Compensation Director in his order dated November 4, 1971, found regarding the nature and extent of the claimant's compensable injury:

"The evidence would indicate that claimant's initial complaints were in regard to his elbow and not to his neck or shoulder or back area. Claimant states that he did not tell Dr. Cavanaugh, the inital treating doctor, about his shoulder. He said it was bothering him but he didn't connect it in any way with his elbow. He said that he did tell Dr. Payne about his shoulder."

Dr. Lichtor's examination of the claimant took place ten months after the alleged injury. Dr. Lichtor noted some tenderness in the neck and shoulder area, and some arthritic changes in claimant's back from X-rays taken. But the director found there was no indication in Dr. Licheor's deposition that he linked the arthritic changes with the claimant's work. The director further noted that Dr. Lichtor's findings in regard to the neck and shoulder area were based mainly on subjective complaints. As a result the director did not give credence to Dr. Lichtor's report giving the claimant an estimated 15% permanent partial disability to the body.

Dr. Gendel's examination of the claimant in March 1971, showed claimant had difficulty with his elbow. There was nothing in Dr. Payne's report to indicate that the claimant complained of any injury to his shoulder and neck area when he was under treatment from Dr. Payne. Dr. Gendel noted that the X-ray examination of the cervical spine was negative for fracture injury and the X-ray examination did not show any disability to the shoulder or elbow. Dr. Gendel's diagnosis was that of a mild traumatic arthritis of the left elbow and residuals of old strain and sprain. He also found mild osteo-arthritis of the cervical spine unrelated to the present injury.

The question as to whether or not there is substantial, competent evidence in the record to support the trial court's judgment, is a question of law as distinguished from a question of fact. (*Cross v. Wichita Compressed Steel Co.*, 187 Kan. 344, 356 P. 2d 804.)

Our review of the record indicates there was substantial, competent evidence to support the findings of the trial court.

Did the payment of $1,100 in a lump sum to the claimant by the respondent on August 4, 1969, constitute payment in settlement of claim and should it be credited against the present award?

The evidence regarding the subject payment is brief and appears to be undisputed. Simply put, the claimant admits receiving payment in the amount of $1,100 on August 4, 1969, the same being made by a draft of Goodyear's insurance carrier. This payment was acknowledged in addition to a number of other

temporary total payments made. In drawing his award, the examiner took note of 15 temporary total payments in the amount of $49 each which totaled $735, but failed to take into account the payment of $1,100. There is no question but that $2,168.25 is the proper total figure for the award, and this figure had not been disputed. The examiner incorrectly concluded that of the total award only $735 had been paid, leaving a balance of $1,433.25. He failed to take into account the $1,100 payment which the claimant himself acknowledged.

The respondent and its insurance carrier raised the issue of a set-off for this amount before the director and submitted the canceled draft by which the payment was made.

The director noted that the date of loss noted on the draft was September 19, 1968, which was the date of the claimant's alleged injury. The director went on to comment that apparently the payment was made in an attempt to compromise settlement of the matter. The director further commented that since the attempted compromise was not carried out within the procedural processes dictated by the pertinent statutes and regulations, the claimant was not prevented from pursuing his claim and requesting a hearing before the examiner. The director went on to hold that this did not mean that the payment which was made and acknowledged could not be deducted from the payments due under the award.

There is no ambiguity regarding the findings upon which the examiner's original award was based.

The trial court adopted the director's position and gave the respondent and its insurance carrier credit for the $1,100 payment.

It is the claimant's position that the trial court erroneously applied the common law rules of restitution (Citing *Tompkins v. Rinner Construction Co.*, 196 Kan. 244, 409 P. 2d 1001.) The claimant argues that due to the lack of compliance with the rules of the Kansas Workmen's Compensation Director, the respondent should be estopped from any set-off or credit. We fail to see merit in this position.

To disallow the respondent and its insurance carrier a credit for the subject payment would work an obvious inequity. It must be conceded the Kansas Workmen's Compensation Laws are to be liberally construed so as to allow payment of compensation whenever reasonably possible. This is not to say, however, that an

injured workman should be allowed to receive what would amount to double payment in a situation such as here.

Conceding the respondent and its insurance carrier acted in an improper manner when they attempted to effect a settlement with the claimant without following the procedures set forth in the workmen's compensation statutes and regulations, this in no way prejudiced the claimant. In spite of the attempted settlement and in spite of the fact that the claimant received a substantial payment, he was not prevented from pursuing his claim in the manner provided by law. The allowance of a credit or set-off for the $1,100 payment would in no way affect the claimant's statutory rights. To disallow the credit would be contrary to the principles of equity. Accordingly, the workmen's compensation director was well within his rights when he sought to remedy the examiner's oversight by crediting the respondent and its insurance carrier with the subject payment. Similarly, the district court did not err in reaching the same conclusion.

The judgment of the lower court is affirmed.