No. 44,832

Bill Gray, *Appellee*, v. A. L. Beller and Home Indemnity Company, *Appellants*.

(428 P. 2d 833)

Opinion filed June 10, 1967.

*J. Eugene Balloun,* of Great Bend, argued the cause, and *H. Lee Turner, Max E. Eberhart* and *Jack G. Duncan,* all of Great Bend, were with him on the briefs for the appellants.

*James P. Johnston,* of Wichita, argued the cause, and *Clarence R. Sowers, John W. Sowers* and *Davis S. Carson,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Hatcher, C.: This is an appeal from an award determining the rating for permanent partial disability in a workmen's compensation case.

It would appear that the claimant was an illiterate laborer 47 years of age. He was employed as a common laborer in construction work. He contends that on July 19, 1963, he was engaged in unloading a truck of sacks of cement weighing some 96 pounds. Sometime between 9 and 10 o'clock a. m. he picked up a sack to hand to a co-worker, Mr. E. L. Gray. As he turned, he stepped into a hole in the bed of the truck causing a catch in his back and a feeling of paralysis in his right leg. He dropped the sack of cement and stated to Mr. E. L. Gray that he had hurt his back. He later mentioned to the foreman that he had hurt his back but would finish the day if it did not get worse. He finished the workshift, went

home and to bed. He was unable to arise the next morning. His sons took him to the Lutheran Hospital in Hoisington, Kansas, where he was treated by Dr. Robert Moore.

Claimant was awarded 22 weeks of temporary total disability and the balance of the compensable weeks at 50 per cent permanent partial disability as compensation under the Workmen's Compensation Act. The award was made by the examiner, approved by the director and adopted by the district court on appeal, except for an increase in the number of weeks of temporary total disability.

The respondent and his insurer have appealed to this court.

Appellants first contend that the evidence was insufficient to prove a compensable injury.

The contention has no merit. Both appellee and his co-worker testified that the injury occurred substantially in the manner we have heretofore stated. Appellants state:

*"Conflicting with claimant's testimony is the testimony of his supervisor, McEachern.* He stated that claimant was not unloading cement sacks on July 18 or 19; that the only truck that had holes into which a man could step was not used for hauling cement, and that the truck used for hauling cement was used exclusively for the hauling of water on the 19th. . . ." (Emphasis supplied.)

Without delving into the evidence further on this point, it will suffice to say that this court does not concern itself with conflicting evidence in a workmen's compensation case. We have so held in a long line of cases. In one of the more recent, *Jones v. City of Dodge City*, 194 Kan. 777, 778, 402 P. 2d 108, we stated:

"Under K. S. A. 44-556, the appellate jurisdiction of this court in workmen's compensation cases is limited to reviewing questions of law only. Whether the district court's judgment in a compensation case is supported by substantial competent evidence is a question of law as distinguished from a question of fact. (*Holley v. Dickey Clay Mfg. Co.*, 157 Kan. 355, 139 P. 2d 846, 148 A. L. R., Anno., 1131; *Coble v. Williams*, 177 Kan. 743, 747, 282 P. 2d 425; *Bowler v. Elmdale Developing Co.*, 185 Kan. 785, 347 P. 2d 391.) In reviewing the record to determine whether it contains substantial evidence to support the district court's factual findings, this court is required to review all of the evidence in the light most favorable to the prevailing party below. Where the findings of fact made by the district court are based on substantial evidence, they are conclusive, and we have no power to weigh the evidence and revise those findings or reverse the final order of the court. . . ." (See, also, *Lees, Administrator v. White*, 197 Kan. 118, 415 P. 2d 272.)

The district court's determination as to whether a claimant's disability was due to an accident arising out of and in the course of his employment will not be disturbed on appellate review when there

is substantial evidence to support it. (*Callahan v. Eby Construction Co.*, 192 Kan. 814, 391 P. 2d 315.)

The appellants further contend that the court did not apply the rule of law applicable to disability rating under the facts in the case and erred in finding claimant suffered fifty per cent permanent partial disability.

The evidence covering the disability rating, other than claimant's lay testimony of his inability to do heavy work, consisted of testimony of three medical experts.

Dr. Coffey's testimony on behalf of claimant is narrated in part as follows:

". . . It was my opinion that Mr. Gray had a 15 per cent permanent partial bodily disability as an impairment of function. This was based upon reasonable medical certainty and I believe the condition to be permanent. I do not believe that Mr. Gray could return to work in construction where he would be required to lift 90 to 100 lb. sacks of cement and move them from one place to another consistently enough to satisfy an employer, because he would have too much trouble with his back. If he tried to do this, he would aggravate his degenerative arthritis and his back would get gradually worse. I don't believe I would pass Mr. Gray from the standpoint of physical examination for work in construction labor. I felt that Mr. Gray was trying to be honest with me in describing his complaints. The impairment of function rating is just Mr. Gray's physical disability per se. It relates nothing to work. My rating of 15 per cent made no attempt to equate that impairment of function to Mr. Gray's ability to work in construction work."

Dr. Hensley's testimony on behalf of appellants is narrated in part as follows:

"I felt at the time I saw him he had a disability of perhaps 15 to 20 per cent, but I am unable to determine how much of that results from lifting the cement and how much from lifting the hay. I think one would anticipate that he would improve to perhaps 5 to 10 per cent permanent rating."

He also testified:

"A. I think that he will improve, yes.

"Q. To the same extent as the average figure which you have cited?

"A. Yes, I think so. Even if he does improve, if he were presented as a question as to whether he should go back to heavy manual labor, I would have some reservations about that."

Dr. Brown testifying for appellants stated that he felt "he [claimant] had a low back instability secondary to degenerative disc disease and a 5 per cent permanent disability." His testimony was further narrated:

". . . I assume that Mr. Gray's pain is coming from pain receptors in the soft tissues around this unstable joint. I think the injury caused a stretching or

partial tearing of the ligaments that hold the joint together. Ligaments heal by the formation of scar tissue. If this man's sprain was severe enough it could increase his back instability. I wouldn't recommend that Mr. Gray do heavy work and that he avoid heavy lifting. This man might do well lifting for instance a 100 lbs., if he had his mind directly to the task he was performing. On the other hand, he might lift less than 50 lbs. and while thinking about something else not having all of his muscles coordinated, he might not get by with that. I don't feel like I can say he can lift 50 or 100 lbs. I think it depends on how he does it rather than the weight. I wouldn't pass this man on an examination for construction labor.

"I believe this man would have a 15 per cent disability on the general labor market.

"If I were to rate him for construction labor the disability, I suppose, would be much greater than 15 per cent. The lifting of a heavy weight that is bulky such as cement and which moves within the bag would make guarding against another injury harder."

The injury to claimant's back is permanent in its nature. A consequent reduction to a lower economic status was fully disclosed by the evidence. There is direct proof that claimant can never retrieve his former capacity. It was the opinion of the experts that claimant could not return to his employment as a construction laborer or do similar work which required the lifting of heavy objects.

In the recent case of *Mooney v. Harrison,* 199 Kan. 162, 427 P. 2d 457, we held in the first paragraph of the syllabus:

"The correct standard for determining the loss in earning capacity of an injured workman is the extent to which his ability has been impaired to procure in the open labor market, and to perform and retain, work of the same type and character he was able to perform before he was injured. (Following *Puckett v. Minter Drilling Co.,* 196 Kan. 196, 410 P. 2d 414.)"

From the evidence which we have highly summarized the district court found:

"The Claimant, as a result of said accident and injury, has been to a great extent eliminated from the labor market where manual labor is involved and this problem is accentuated by the Claimant's illiteracy."

The court concluded that the claimant suffered fifty per cent permanent general disability to the body as a whole.

This court is bound by the trial court's findings under the evidence in this case. As has previously been stated, on appellate review of a workmen's compensation case, this court does not weigh the evidence and in determining its sufficiency it must consider the evidence in the light most favorable to the prevailing party.

What has been said should dispose of this controversy. However,

appellants seriously contend that this court has in effect held that a claimant's disability is to be measured by his disability to obtain work in the open labor market and not by his disability for performing labor of the same type he was performing prior to his injury. They cite in support of their contention *Daugherty v. National Gypsum Co.,* 182 Kan. 197, 318 P. 2d 1012; *Smith v. Jones,* 185 Kan. 505, 345 P. 2d 640; *Cody v. Lewis & West Transit Mix,* 186 Kan. 437, 351 P. 2d 4; *Hallett v. McDowell & Sons,* 186 Kan. 813, 352 P. 2d 946; *Taber v. Tole Landscape Co.,* 188 Kan. 312, 362 P. 2d 17; *Gutierrez v. Harper Construction Co.,* 194 Kan. 287, 398 P. 2d 278, and *Puckett v. Minter Drilling Co.,* 196 Kan. 196, 410 P. 2d 414. We do not find the cases to be contrary to the rule quoted above from the *Mooney* case just decided.

In support of their contention that the test for disability is limited to ability to obtain work in the open labor market regardless of the type of work, appellants quote from page 203 of the *Daugherty* case where we stated:

". . . Permanent partial disability of an injured workman based upon substantial medical testimony is compensable notwithstanding he may earn as much or more after his injury in the same or other employment. The rule is based upon the fact that partial general body disability is a definite loss to the injured workman, and is a deterrent to his obtaining and retaining work in the open labor market (*Beal v. El Dorado Refining Co.,* supra; *McGhee v. Sinclair Refining Co.,* supra; *Rupp v. Jacobs,* supra; *Davis v. Braun,* supra)."

The quotation must be read in connection with a prior paragraph where we stated on page 202 of the *Daugherty* case:

". . . 'Disability' as used in G. S. 1955 Supp. 44-510 (3) (c) (24) is the inability of the workman to perform work he was *able to perform* prior to his injury, and is the test by which compensation is measured for injury arising out of and in the course of his employment (*Beal v. El Dorado Refining Co.,* 132 Kan. 666, 672, 296 Pac. 723; *McGhee v. Sinclair Refining Co.,* 146 Kan. 653, 659, 73 P. 2d 39; *Rupp v. Jacobs,* 149 Kan. 712, 717, 88 P. 2d 1102; *Davis v. Braun,* 170 Kan. 177, 183, 223 P. 2d 958). . . ."

The *Smith, Code* and *Hallet* cases, *supra,* cited by appellants, followed the ruling in the *Daugherty* case to the effect that the criterion for compensation is the inability of the workman to perform work he was able to perform prior to his injury.

It must be understood that in the four cases just mentioned the injured workman had returned to work at the same or greater compensation that he was receiving before his injury, and a ruling was being announced by which the claimant could be compensated for the disabling injuries preventing him from performing work he was

able to perform prior thereto and which would handicap him in procuring employment in the open labor market in the future. Although the injured employee may presently be receiving equal or better compensation, it could not be assured that he would permanently retain such employment and would never again have to seek employment in the open labor market. In the case now before us for determination, and in the following cases which we considered, the injured employee could neither do the same or similar work that he could do prior to his injury nor earn the same amount of compensation.

In *Taber v. Tole Landscape Co.*, supra, the court had under consideration the disability rating where the claimant, due to his injury, was unable to do manual labor, but after his injury received a Bachelor's degree from the Kansas State College at Pittsburg and obtained employment as a public school teacher. The district court allowed him 66⅔ per cent disability. In disposing of the case we stated at page 316 of the opinion:

". . . Our conclusion is that the court placed too much emphasis on the fact claimant had secured employment in another line of work and did not fully consider the evidence relating to his inability to perform work he was able to perform prior to his injury. . . ."

In the *Gutierrez* case, *supra*, we held in the third paragraph of the syllabus:

"Loss of earning power of a workman may result from his inability to obtain work as well as from inability to perform procurable work on the open labor market due to the impairment of his physical fitness, and the words 'obtaining and retaining work on the open labor market' mean the ability to obtain and retain work of the same kind and character that the workman was able to perform prior to his injury."

Although the language used may not have always been of the same exactness, we find nothing in the cases considered which detract from the rule announced in the recent case of *Puckett v. Minter Drilling Co.*, supra, and followed in *Mooney v. Harrison*, supra, to the effect that the disability rating of an injured employee is the extent to which his ability has been impaired to procure in the open labor market work of the same type and character he was able to perform before he was injured, and to perform such work and retain such employment.

The disability rating allowed met the test herein announced.

The judgment is affirmed.

APPROVED BY THE COURT.