No. 45,685

Mary L. Davis, (Claimant), *Appellee,* v. Winchester Packing Company, (*Respondent*),

and

Zurich Insurance Company, (Insurance Carrier), *Appellants.*

(460 P. 2d 617)

Opinion filed November 8, 1969.

*Kenneth E. Peirce,* of Hutchinson, argued the cause, and *Frank S. Hodge, H. Newlin Reynolds, Dennis O. Smith* and *Dan W. Forker, Jr.,* all of Hutchinson, were with him on the briefs for the appellants.

*E. Dexter Galloway,* of Hutchinson, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Kaul, J.: This is an appeal by respondent and its insurance carrier, hereafter referred to as respondents, from an award of permanent partial disability in a workmen's compensation case.

The examiner's award of compensation for seventy-five percent permanent partial disability was affirmed by the director. The trial court approved and adopted the findings, decision and award. This appeal followed.

The principal issues concern the test applied in determining

claimant's permanent partial disability and whether the award was supported by any substantial competent evidence.

Claimant's employment in respondent's packing house consisted of wrapping, packaging and handling meat products. She handled trays of wieners weighing up to twenty-four pounds and boxes of bacon ranging in weight from six to twelve pounds. She was injured in the course of her employment on March 17, 1966.

Following her injury, claimant underwent a course of conservative treatment under the care of Dr. John B. Jarrott, an orthopedic surgeon, until June 8, 1966, when she was operated for a denucleation of a herniated intervertebral disc. Claimant remained under Dr. Jarrott's care until June 28, 1967, when she was released with what Dr. Jarrott described as a fifteen percent loss of function.

A claim for compensation was filed and the matter first came before Examiner Greenleaf on September 14, 1966, when, on motion of claimant, an order was entered awarding temporary total disability for a period of nine weeks at the rate of $42 per week.

At a hearing before Examiner Greenleaf on October 7, 1966, the parties stipulated that claimant was still totally disabled. Claimant was found to be entitled to seventeen weeks and three days temporary total disability at the rate of $42 per week, in addition to the nine weeks ordered paid on September 14, 1966. Respondents were ordered to pay temporary total disability at the rate of $42 per week until further order, but not to exceed a total of 415 weeks.

On July 17, 1967, respondents made application for review and requested that temporary total disability payments be terminated as of June 28, 1967, the date claimant was released by Dr. Jarrott.

Further evidence was submitted and, on August 27, 1968, Examiner Mauch, who replaced Examiner Greenleaf, made the award from which this appeal stems.

Examiner Mauch reviewed all of the evidence, which had been submitted during the proceedings, and found claimant's average weekly wage was $84.80; that she was entitled to sixty-six weeks of temporary total disability at the rate of $42 per week, followed by a seventy-five percent permanent partial general disability at the rate of $38.16 per week for 349 weeks. After computing sums due and paid, or payable, Examiner Mauch awarded the balance of compensation to be paid at the rate of $38.16 per week for 289 weeks or until further order of the director.

At the request of respondents, the director reviewed the award of Examiner Mauch and ordered it affirmed. In his order on review the director noted:

". . . The primary issue on review was the nature and extent of claimant's disability. Dr. John B. Jarrott testified that the claimant had a 15% functional disability and the examiner found that this amounted to a 75% permanent partial work disability. An examination of the record leads the director to conclude that there is ample evidence therein to sustain the examiner's finding that the claimant is suffering a 75% permanent partial work disability of the body as a whole and that this is the amount of disability he [she] should be compensated for even though his [her] functional disability is somewhat less. See *Puckett v. Minter Drilling Company,* 196 Kan. 198; *Gray v. Beller,* 199 Kan. 284, and *Mooney v. Harrison,* 199 Kan. 162."

On appeal, pursuant to K. S. A. 44-556 (now K. S. A. 1968 Supp. 44-556), the district court adopted the findings and award of the examiner, as affirmed by the director, and entered judgment accordingly.

Thereafter respondents perfected this appeal. Their principal attack on the award is directed at the allowance of seventy-five percent permanent partial disability. A two-pronged argument is presented. First, respondents contend an incorrect standard was used in determining the rate of permanent partial disability and, second, the rate awarded is not supported by any substantial competent evidence.

Although not in the order presented by respondents, we believe it more logical to first consider the propriety of the test applied by the trial court and then turn to the question of sufficiency of evidence.

As we have already pointed out, the director in his order on review recognized the difference between a functional or anatomical disability and a work disability.

In this summary of the evidence, Examiner Mauch stated:

"In the judgment of the Examiner, the impairment of function rating of 15% does not accurately reflect the claimant's work disability. Work disability is determined by measuring the claimant's ability to obtain and retain work like or a similar kind held at the time of her accident. From the employment history of the claimant, she is employed in a laboring capacity at the Winchester Packing Company as well as prior employment. Her educational background and lack of training is not conducive to work except that obtainable in a laboring capacity or classification."

We believe the test applied by the examiner and director, and adopted by the trial court, conforms with the test prescribed by this court for determining loss of earning capacity in *Puckett v. Minter Drilling Co.*, 196 Kan. 196, 410 P. 2d 414, where we held:

"The correct standard for determining the loss in earning capacity of an injured workman is the extent to which his ability has been impaired to procure in the open labor market, and to perform and retain, work of the same type and character he was able to perform before he was injured." (Syl. ¶ 2.)

Our holding in *Puckett* was adhered to and restated in *Mooney v. Harrison*, 199 Kan. 162, 427 P. 2d 457, and *Gray v. Beller*, 199 Kan. 284, 428 P. 2d 833.

While respondents admit that loss of function, as found by a doctor, and a partial disability, as found by an examiner, can differ, they assert there still must be some correlation between the two.

Respondents contend that the *Puckett* and *Mooney* rule was construed too narrowly in its application here. It is argued that Dr. Jarrott's testimony means that claimant should be able to resume regular work within the limitations of a fifteen percent loss of function and that the examiner put too much emphasis on whether claimant could go back to her same job with respondent Packing Company, when he should have entered the award on her ability to procure work of a similar character in the open labor market.

What appears to be inconsistency between a doctor's theory for rating permanent partial disability and the correct standard prescribed by this court was dealt with in both the *Puckett* and *Mooney* decisions.

In *Puckett* we found claimant's medical witness had clearly deviated from the correct standard of evaluating disability for compensation purposes but his testimony concerning the extent of claimant's injuries was acceptable, together with other evidence of work disability, in determining permanent partial disability.

In discussing this subject in *Mooney v. Harrison*, supra, we said:

"Appellants contend the entire testimony of Dr. Filley should be discredited and thus disregarded because he demonstrated a complete lack of understanding as to disability ratings under Kansas Workmen's Compensation Law.

"We cannot agree with appellants' suggestion. Although they may have established that the doctor was not the best workmen's compensation attorney, it was no reflection on the doctor's medical testimony as to the nature and extent of appellee's injuries.

. . . . . . . . . . . . .

"Regardless of the doctor's theory for rating permanent partial disability under the Workmen's Compensation Act, the trial court did not accept his

percentage rating. The court was justified in using the doctor's medical testimony as to the nature and extent of appellee's injuries in arriving at his own permanent partial disability rating." (p. 164.)

The import of *Puckett,* as gleaned from the opinion and the futher discussions of the subject in *Mooney* and *Gray,* is that it is the function of the trial court to consider the medical testimony concerning loss of function, plus other testimony relating to the extent there has been an impairment of the injured workman's ability to procure in the open labor market, and to perform and retain, work of the same type and character he was capable of performing before his injury. Taking all of the relative evidence into consideration, it is then the trial court's function to. determine as a matter of fact the percentage by which claimant's ability has been impaired.

In the instant case, we do not believe Dr. Jarrott's testimony expresses a theory deviating from the correct standard. We think a fair analysis of Dr. Jarrott's testimony is that in finding a general loss of function of fifteen percent, based on disc surgery, he was not attempting to evaluate a work disability for compensation purposes but was establishing a medical or anatomical loss of function amounting to only one facet of claimant's employability, leaving the ultimate question to be determined by the trier of facts.

We believe the record clearly reflects the proper test for determining disability was applied in the proceedings below.

The evidence covering the disability rating consisted of the testimony of Dr. Jarrott, William Burger, an employment counselor for the Employment Security Division of the State Labor Department, and that portion of claimant's testimony bearing on the subject.

Bearing in mind that the evidence is not to be weighed by this court and must be considered in the light most favorable to the prevailing party below (*Mooney v. Harrison,* supra), we briefly summarize the evidence.

Claimant testified she was thirty-one years of age, had an eighth grade education, had no special skills or training, had been employed during her entire adult life in manual labor jobs, requiring lifting, walking, bending and stooping; that since her release respondent Packing Company had refused to re-employ her and she has been unable to find other employment because of her disability.

In addition to finding a fifteen percent general loss of function,

Dr. Jarrott testified that recent x-rays showed claimant had suffered some degeneration in the disc space since surgery; that the lumbo-sacral facets did not match; that she would probably have trouble if she attempted to lift or stand for long periods of time or do anything using her hands over her head; and if she were employed standing and lifting over twenty-five pounds she could anticipate further trouble.

Burger testified claimant had been to a great extent eliminated from the manual labor market and her problem is further intensified by her lack of education and training.

Although we have limited our presentation of the evidence disclosed in the record, we think the testimony presented amply demonstrates that there was substantial competent evidence to support the trial court's award.

Two other minor points raised by respondents should be mentioned.

It is contended that at the hearing on September 14, 1966, counsel stipulated, and Examiner Greenleaf found, claimant's average weekly wage to be $81.60, and such finding was neither changed nor appealed from in proper time. Therefore, it is argued the trial court erred in finding the average weekly wage to be $84.80. Respondents cited our holding in *Scammahorn v. Gibraltar Savings & Loan Assn.*, 197 Kan. 410, 416 P. 2d 771, that issues are resolved and the record finalized before the examiner, and issues of fact cannot be raised for the first time on appeal to the district court.

The principle announced in our holding in *Scammahorn* is correctly stated by respondents but it is not applicable here.

The order of September 14, 1966, was based on proceedings had the preceding day, wherein claimant's counsel, in answering a question put by the examiner, stated the claimant's average weekly wage to be $81.60. However, there was no stipulation or finding to that effect. The examiner stated it was only necessary at the time to know that the amount was sufficient to entitle claimant to the maximum temporary total. Counsel for both parties agreed to the examiner's statement.

In the award made by Examiner Mauch on August 27, 1968, the first finding of claimant's average weekly wage was made and determined to be $84.80, on claimant's testimony; that she was

working a forty hour week at $2.12 an hour. This is the award approved by the director, adopted by the trial court, and appealed from.

Respondents complain the award of sixty-six compensable weeks of temporary total disability is excessive by 1.57 weeks. Respondents apparently base their calculations on the interim orders on temporary total disability made by Examiner Greenleaf. An examination of the 1966 and 1967 calendars discloses an interim of sixty-seven weeks between March 17, 1966, the date of injury, and June 28, 1967, the date of claimant's release from temporary total disability. It appears Examiner Mauch, in finalizing the award on August 27, 1968, subtracted the statutory one week waiting period from the sixty-seven calendar weeks and awarded sixty-six weeks of temporary total. We find no material error in the examiner's calculation.

We find no error in the proceedings below, therefore, the judgment is affirmed.