No. 46,983

PAUL M. ELLIOTT, *Appellant,* v. RAINS AND WILLIAMSON OIL COMPANY AND ARGONAUT INSURANCE COMPANY, *Appellees.*

(516 P. 2d 1004)

Opinion filed December 8, 1973.

*Raymond L. Dahlberg,* of Turner, Chartered, of Great Bend, argued the cause, and *Lee Turner,* of the same firm, was with him on the brief for the appellant.

*Thomas J. Berscheidt,* of Hampton and Ward, of Great Bend, argued the cause, and *Tudor W. Hampton,* and *Jerry W. Ward,* of the same firm, were with him on the brief for the appellees.

The opinion of the court was delivered by

PRAGER, J.: This is an appeal by the claimant, Paul M. Elliott, from a judgment of the district court awarding 15% permanent partial disability in a workmen's compensation case. The examiner and director had awarded a 25% permanent partial disability which was modified by the district court on appeal. For purposes of this appeal we will refer to the appellant, Paul M. Elliott, as the claimant. We will refer to the appellee, Rains and Williamson Oil Company, as the respondent.

The record discloses that the claimant as an employee of the respondent on January 28, 1970, was performing the duties of a driller on a rotary drilling rig. On that date the crew was in the process of tearing down the rig when the claimant slipped and fell striking his head on a steel ramp. There is no question that he suffered a compensable injury. Following the injury claimant finished his work and returned to Great Bend as the work had been completed. He experienced headaches and numbness of his left shoulder and arm. On February 4, 1970, he commenced receiving treatment from Dr. Reiff Brown in Great Bend. He was hospitalized for 15 days and treated as an out-patient for approximately six

weeks. On about April 23, 1970, claimant returned to work with the respondent as a driller and continued to work in that capacity until November 15, 1970, a period of approximately seven months. On November 15, 1970, claimant quit work and bought a trash hauling service.

After starting his treatment with Dr. Brown the claimant was released by the doctor to return to work on April 20, 1970. He was examined by Dr. Brown on July 27, September 25, and October 26, 1970, in connection with his injury. The last time claimant was examined by Dr. Brown was on October 13, 1971, for another injury that the claimant sustained while doing oil field work; this injury was to his elbow.

At the hearing held before the workmen's compensation examiner, one of the contested issues was the nature and extent of claimant's disability. As would be expected the testimony was conflicting. The claimant, Elliott, testified about his headaches which according to him caused pain and difficulty from the date of the accident down to the time of the hearing. He testified that when he returned to work with the respondent he had difficulty working because of the pain and that he continued to work until he finally had to quit because he could not take it any longer. At the time of the hearing the pain had progressed into the shoulder and left arm and his left hand was frequently numb. His neck and head hurt, especially when he twisted his head or moved around. According to claimant he can no longer perform his duties as a driller and now has difficulty working three hours a day in his trash work.

W. A. Walker was the respondent's superintendent after claimant returned to work following his injury. He testified that claimant never complained about having any problems with his neck and that he had no problems performing his work as a driller.

Two medical experts testified in regard to claimant's physical condition and disability. The claimant called Dr. Alexander Lichtor who examined the claimant once on December 8, 1970. He found tenderness and neck pain. It was his opinion that the claimant had sustained a soft tissue injury to the neck with emotional overlay. He prescribed conservative treatment and was of the opinion that the claimant had a 15% permanent partial disability of the body as a whole. It should be noted that the 15% figure was expressed in terms of permanent partial disability rather than being related to impairment of function. Dr. Lichtor was further of the opinion that

claimant could perform work as a roughneck or trash hauler and that although he could do physical work this did not necessarily mean that he did not have pain. The respondent called Dr. Reiff Brown as a witness. He had diagnosed the main difficulty as cervical strain or contusion which accounted for claimant's symptoms. It was his opinion that the claimant could probably work as a driller and that he had a 10% impairment of function of the body as a whole as a result of the accident. He frankly stated that if he had based his rating on the subjective complaints of the claimant the rating would have been considerably higher. Apparently he did not accept them in their entirety.

We have no hesitancy in holding that on the basis of the evidentiary record a trier of facts could reasonably have entered an award based upon a 15% permanent partial disability and that such award is supported by substantial competent evidence. That would normally end the matter as far as an appeal to the supreme court is concerned. In this case, however, the claimant contends that the district court applied an improper, arbitrary test in arriving at the extent of the claimant's permanent partial disability.

The thrust of the claimant's argument here is that the district court erred as a matter of law in reducing the 25% permanent partial disability awarded by the examiner and director to a 15% figure on the single factor of impairment of function without taking into consideration the ability of the claimant to perform his work as a driller. Claimant further contends that the district court evidenced passion and prejudice in determining the case. The memorandum decision of the district court refers with approval to *Davis v. Winchester Packing Co.,* 204 Kan. 215, 460 P. 2d 617, as one of the most recent cases setting forth the test to be applied in dealing with permanent partial disability as it relates to impairment of function. There we held that the correct standard for determining the loss in earning capacity of an injured workman is the extent to which his ability has been impaired to procure in the open labor market, and to perform and retain, work of the same type and character he was able to perform before he was injured. It is obvious that the district court in this case had *Davis* in mind in arriving at its decision. Claimant however is concerned with the following language contained in the court's memorandum opinion:

"It is this Court's generally accepted opinion that in relating impairment of function to work disability that there is a correlation between the two up to the

point where the impairment of function rating is between 15-20 percent. There is less correlation between it and work disability, where the impairment is greater than 15-20 percent.

"Since there are no set or rigid guide lines for a Court to follow in relating impairment of function to work disability, and the added factor that a Court must make its determination from a cold record rather than seeing and hearing live testimony, a Court's determination as to work disability is always speculative. A Court, however, is charged with making a determination of work disability, and must do the best it can and do what it believes to be proper under all circumstances existing in a particular case.

"With the above in mind, and giving the Workmen's Compensation Act the liberal construction in Claimant's favor, the Court is of the opinion that the work disability allowed by the Examiner is slightly high. This Court believes and finds that Claimant suffered a 15 percent general bodily disability as a result of the accident in question."

We fail to see how it can be reasonably maintained that the district court rigidly applied an improper test in determining the percentage of claimant's permanent partial disability. After discussing the correlation between impairment of function and work disability, the district court stated that there are *no* set or rigid guidelines for a court to follow. The court then pointed out the difficulty that a district court has in determining work disability from a cold record. The court further stated that in arriving at the award it is giving the claimant a liberal construction of the act in claimant's favor.

The district court was not required to accept all of the subjective complaints of the claimant as true. It had the right to consider the evidence which showed the claimant returned to work after his injury and continued to work without complaint for a period of seven months. It also had the right to accept Dr. Lichtor's opinion that claimant had a permanent partial disability of 15% of the body as a whole.

We find that the claimant's points on this appeal are wholly without merit. The judgment is therefore affirmed.

OWSLEY, J., dissenting: I cannot conscientiously give my approval to the majority opinion. Again, my brothers have relied on the oft-stated rule that in review of a workmen's compensation case we are limited to ascertaining whether the record contains any evidence to justify the trial court's findings of fact. In this case, the majority opinion is attempting to apply this rule to prevent review of a question of law.

The trial court in its memorandum opinion stated:

"It is this Court's generally accepted opinion that in relating impairment of function to work disability that there is a correlation between the two up to the point where the impairment of function rating is between 15-20 percent. There is less correlation between it and work disability, where the impairment is greater than 15-20 percent."

There is nothing in the compensation act or in the many decisions construing the act which forms any basis for this conclusion. In fact, many of our cases are to the contrary.

In *Davis v. Winchester Packing Co.*, 204 Kan. 215, 460 P. 2d 617, claimant suffered a herniated intervertebral disc resulting in 15% impairment of function. Due to claimant's employment (manual labor) this Court sustained the examiner's finding that claimant suffered a 75% permanent partial work disability.

In *Gray v. Beller*, 199 Kan. 284, 428 P. 2d 833, the treating physician testified claimant had a 15% impairment of function. Claimant was employed as a common laborer in construction work. The injury was to his back and this Court sustained the examiner's finding that claimant suffered 50% permanent partial disability.

The opposite situation is found in *Gutierrez v. Harper Construction Co.*, 194 Kan. 287, 398 P. 2d 278, where the claimant, a carpenter and general laborer, suffered a back injury resulting in a 35% loss of function. This Court affirmed the examiner's finding that claimant suffered a 40% permanent partial disability.

The majority opinion recognizes that the test set up in the trial court's memorandum opinion is improper. It attempts to avoid its import by quoting the trial court's statement that there are no set or rigid guidelines for the trial court in determining the correlation between the impairment of function and work disability. I am unable to follow this reasoning. It is difficult for me to understand why the trial court would set up the test unless it intended to give it application.

We cannot ignore the statement on the basis that the court also said there are no set or rigid guidelines when the court specifically pointed out there are guidelines. It appears to me we have a duty not only to disapprove the improper statement of law, but also to disapprove any judgment which even remotely might be based thereon.

SCHROEDER and FONTRON, JJ., join in the foregoing dissenting opinion.