No. 47,427

Dale May, *Appellant*, v. Quality Chemical, Inc. and Aetna Casualty and Surety Company, *Appellees*.

(524 P. 2d 761)

Opinion filed July 17, 1974.

*Dan E. Turner*, of Topeka, argued the cause, and was on the brief for the appellant.

*Jerry M. Ward*, of Hampton and Ward, of Great Bend, argued the cause, and *Tudor W. Hampton*, and *Thomas J. Berscheidt*, of the same firm, were with him on the brief for the appellees.

The opinion of the court was delivered by

Prager, J.: This is a workmen's compensation appeal. The examiner and director determined that the claimant, Dale May, had suffered a 50 percent permanent partial bodily disability as a result of an accident. The district court found a 30 percent permanent partial disability. For purposes of this appeal we will refer to the appellant, Dale May, as the claimant. We will refer to the appellee, Quality Chemical, Inc., as the respondent or employer.

The record discloses that the claimant was an employee of the respondent serving as a batchman in barrel reconditioning. The claimant's job consisted of lifting 35 to 45 pound barrels into a dunk tank where they were washed out. Claimant would then take the barrels to another tank where they were given a caustic bath following which the barrels were taken to a rim straightener, to a drying room and finally to a paint room. In each step of the operation claimant was required to lift and carry the empty barrels just described. Occasionally the claimant would be called upon to mix chemicals and to handle full barrels which weighed from 475 to 500 pounds. On December 20, 1969, claimant was in the process of un-

loading some barrels when he wrenched his back. The pain subsided after three or four days and he returned to work. On February 11, 1970, while straightening a rim on a barrel claimant suffered another back injury which incapacitated him for several days. His physician, Dr. Reiff Brown, prescribed pain pills and advised physical therapy. He returned to work on February 16 and on March 9, 1970, his back gave away completely while he was taking a barrel out of the paint box. Claimant immediately contacted Dr. Brown who advised him not to work until his back was better. Dr. Brown diagnosed claimant's injury as an acute lumbosacral strain superimposed on a spondylolisthesis. After a period of conservative treatment Dr. Brown performed a spinal fusion on the claimant's back on March 18, 1971.

At the hearing held before the workmen's compensation examiner one of the contested issues was the nature and extent of claimant's disability. As would be expected the testimony was conflicting. The claimant, Dale May, testified in substance that prior to his injury he had been able to engage in work involving heavy lifting and previously had worked as a pumper and roughneck in an oil field. At the time of the hearing he testified that he could not lift anything. He is presently employed by a cattle company in which he is required to drive a feed truck, ride a horse and herd cattle. He is not required to do any lifting. Three medical experts testified in regard to claimant's physical condition and disability. Dr. Alexander Lichtor testified as to his condition prior to the spinal fusion but his testimony shed no light on the claimant's ultimate permanent disability. Dr. Reiff Brown testified that he is an orthopedic specialist and that he was the claimant's treating physician. In his opinion the spinal fusion performed on March 18, 1971, had been highly successful and the claimant had progressed to the point where he was without pain except for occasional pain after he had performed heavy activities. Dr. Brown testified that claimant had been released to return to any type of work activity. He recommended that claimant not lift objects weighing in excess of 50 to 75 pounds but he believed that claimant could be otherwise active without severe danger. It was Dr. Brown's opinion that claimant had a 15 percent permanent partial functional impairment.

Dr. Roy B. Coffey, an orthopedic surgeon in Salina, examined the claimant on April 12, 1972. It was his opinion that a solid fusion had been achieved and that the claimant had a 15 to 18 percent impairment of function of the body as a whole. Dr. Coffey

described spondylolisthesis as a developmental defect which creates an unstable back and predisposition to back pain. It was his judgment that Mr. May should go back to work. He would limit lifting by Mr. May to 50 pounds. It was his judgment that claimant should not take any type of employment where he stands or walks on cement most of the day. In Dr. Coffey's judgment the success of the overall treatment and spinal operation was good, if not excellent.

Claimant contends on this appeal that he is totally disabled since as a result of his injury he cannot perform the type of work which he previously was able to do. He maintains that an award based upon a 30 percent permanent general bodily disability is wholly inadequate. The jurisdiction of this court in determining workmen's compensation appeals has been stated many times. In reviewing the record to determine whether it contains substantial competent evidence to support the trial court's judgment we are required to examine all of the evidence in a light most favorable to the party prevailing in the district court. If there is substantial competent evidence to support the finding it must be affirmed even though the record discloses some evidence which might warrant the district court in making a contrary decision. (*Meyers v. Consolidated Printing & Stationery Co.*, 201 Kan. 806, 443 P. 2d 319.) Considered in a light most favorable to the respondent the record shows that both Dr. Brown and Dr. Coffey found claimant sustained a functional impairment of 15 percent. Both doctors stated that claimant could do manual labor although somewhat restricted in lifting heavy objects. Furthermore the trial court could take into consideration the fact that at the time of the hearing claimant was working for a cattle company where he was required to drive a feed truck, ride a horse and herd cattle. We find that an award based upon a 30 percent permanent partial bodily disability is supported by the evidentiary record. That would normally end the matter. In this case, however, the claimant contends that the district court applied an improper test in arriving at the extent of claimant's permanent partial disability. Claimant argues that the district court based its determination of disability solely upon the correlation of functional impairment to work disability. The error in applying such a test is discussed in some depth in *Elliott v. Rains & Williamson Oil Co.*, 213 Kan. 340, 516 P. 2d 1004. In *Elliott* we emphasized that the correct standard for determining loss of earning capacity of an injured workman is the extent to which his ability has been impaired to procure in the open labor market, and to perform and retain,

work of the same type or character he was able to perform before he was injured. We do not believe that the record in this case sustains the claimant's contention that the district court considered only functional impairment in determining the percentage of claimant's permanent partial disability. In its memorandum opinion the district court points out that the workmen's compensation act is to be given a liberal construction and that the matter of work disability sustained by a claimant must be viewed with *all* the evidence in mind, both medical and lay, and the court must do what it feels *is* proper, knowing there are no specific guidelines to follow. Furthermore the trial court found a 30 percent permanent partial disability although the medical testimony established a functional impairment of 15 to 18 percent.

The claimant's second point on this appeal is that the trial court erred in disallowing the value of the use of a company pickup truck, furnished by respondent to the claimant, in the computation of his weekly wage to be used in determining the amount of his compensation. The claimant relies upon *Leslie v. Reynolds,* 179 Kan. 422, 295 P. 2d 1076, which held that the value of the use of an automobile, with all expenses paid, which is included in the contract of hiring as recompense thereunder, may be included and considered in determining the average weekly wage of an injured employee. In *Leslie* it was not disputed that the terms of the employment contract included the furnishing for the employee's use of a new automobile for business and personal use. K. S. A. 44-511 (1) excludes from the definition of the term "wages," gratuities received from the employer which are not a part of the contract of hiring. In this case there was a conflict in the testimony. The claimant took the position and testified that there was an agreement on the part of his employer to furnish an automobile and credit cards for claimant's personal use. The testimony of one of respondent's executives, Thomas A. Allen, was to the contrary. He testified that the company furnished a truck to the claimant to be used only for company business and not for unlimited personal use and that claimant was not employed with any understanding that he was to be furnished the use of a pickup truck in addition to his hourly pay. In short, a factual issue was presented which was determined by the district court in favor of the respondent. We hold that the finding of the district court that the furnishing of an automobile to the claimant by his employer for his personal use

was not a part of the contract of employment is supported by substantial competent evidence.

For the reasons set forth above the judgment of the district court is affirmed.

OWSLEY, J., dissenting: I disagree with the majority opinion as I did in *Elliott v. Rains & Williamson Oil Co.*, 213 Kan. 340, 516 P. 2d 1004.

In *Elliott*, the trial court's memorandum opinion was quoted:

" 'It is this Court's generally accepted opinion that in relating impairment of function to work disability that there is a correlation between the two up to the point where the impairment of function rating is between 15-20 percent. There is less correlation between it and work disability, where the impairment is greater than 15-20 percent.' " (pp. 342-343.)

In this case the trial court's memorandum opinion contained the following language:

This Court had in past cases of this nature set forth that it is generally accepted that some correlation exists between impairment of function and work disability, when the impairment is in range of 15-20 percent; that thereafter there is less correlation between the two. The Court believes that this is applicable in this case."

Neither the majority opinion in *Elliott* nor the majority opinion in this case approves the rule of law expounded by the trial court. Each of the majority opinions, however, seeks to avoid its significance by stating there are no specific guidelines to follow and when the trial court considers all the evidence the appellate court should affirm when the result is supported by substantial competent evidence. While some uncertainty may have existed in *Elliott* as to the application of the rule, there can be no doubt that in this case the rule was applied and was at least partially the basis for the reduction in the award. The trial court specifically stated that the rule was applicable in this case. There is no excuse for this court's not taking a firm position on this point. If it is an erroneous statement of the law we should say so and if it is not we should give it our approval.

We have stated on many occasions that the correct standard for determining the loss in earning capacity of an injured workman is the extent to which his ability has been impaired to procure in the open labor market, and to perform and retain, work of the same type and character he was able to perform before he was injured. (*Davis v. Winchester Packing Co.*, 204 Kan. 215, 460 P. 2d

617; *Mooney v. Harrison,* 199 Kan. 162, 427 P. 2d 457; *Gray v. Beller,* 199 Kan. 284, 428 P. 2d 833; and *Puckett v. Minter Drilling Co.,* 196 Kan. 196, 410 P. 2d 414.) The paramount consideration in a workmen's compensation case is work disability. Functional disability is only a secondary consideration and admissible in evidence only as an element that goes into the process of determining work disability. To say there is a correlation between impairment of function and work disability when the impairment is in the range of 15-20 percent is contrary to the foregoing statement repeatedly asserted by this court as to the rule for determining loss in earning capacity. When a trial court states an incorrect rule of law and states specifically that it has application to the case before it, the ultimate results should not be accepted by this court on the ground that if the rule had not been applied there was other evidence to support the results. It is obvious from the language used by the trial court that the award to this workman would have been in a different amount without the application of an erroneous rule of law.

For these reasons and others stated in my dissent in the *Elliott* case, I dissent from the majority opinion.

SCHROEDER and FONTRON, JJ., join in the foregoing dissenting opinion.