No. 48,371

Loyde Anderson, *Appellant and Cross-Appellee*, v. Kinsley Sand & Gravel, Inc., and St. Paul Insurance Company, *Appellees and Cross-Appellants.*

(558 P. 2d 146)

Opinion filed December 11, 1976.

*Jack W. Shultz,* of Shultz & Shultz, Chartered, of Dodge City, argued the cause and was on the brief for the appellant and cross-appellee.

*Jerry M. Ward,* of Ward & Berscheidt, of Great Bend, argued the cause and was on the brief for the appellees and cross-appellants.

The opinion of the court was delivered by

Owsley, J.: Claimant in a workmen's compensation case was injured on October 24, 1972, when his sand truck ran off a road between Kinsley and Gray, Kansas. As his truck ran into the ditch and caught fire, sand in the box pushed the cab forward,

pinning claimant. He felt a sharp pain in his left hip. By crawling through the windshield he escaped the burning truck. At the time of the accident claimant was hauling a load of sand for the respondent, Kinsley Sand & Gravel, Inc. As a result of the accident claimant suffered burns, superficial abrasions and injury to his lower left quadrant.

At a hearing before the workmen's compensation examiner, where it was stipulated that claimant sustained a personal injury, claimant was found to have sustained temporary total disability and a twenty-five percent permanent partial disability, and was awarded compensation on that basis. This award was approved by the workmen's compensation director.

On appeal the issues were whether an employer-employee relationship existed between claimant and respondent at the time of the accident, and the nature and extent of disability. The district court found the employer-employee relationship did exist, but found claimant did not suffer permanent partial disability and denied recovery.

Claimant has appealed, claiming the district court's finding that he had no permanent partial disability is contrary to the law and the evidence. Respondent's cross-appeal asserts the finding by the district court that an employer-employee relationship existed at the time of claimant's injury is not supported by substantial competent evidence.

A search of the record fails to disclose any effort on the part of claimant to relate his injury to the type of work he was performing at the time the injury occurred. We must determine whether claimant is entitled to recover for functional disability when he has failed to relate the functional disability to work disability.

Charles F. McElhinney, M. D., testified that claimant was referred to him by Dr. McKim of Kinsley, who rendered emergency treatment; that he first saw claimant on October 24, 1972, and at that time he was complaining of pain in his chest and upper abdomen, in his left buttock, left hand and arm, and pain and numbness around his left eye; that examination revealed a large abrasion and loss of superficial tissue over the left buttock and lower left hip, first and second degree burns on the left buttock and left hand and arm, pain in the left hip with motion, as well as "guarding and tenderness . . . and rebound" in the upper abdomen. Since claimant had been administered narcotics which failed to relax abdominal muscles, internal abdominal injury was

suspected and an exploratory laparotomy was performed disclosing no major abdominal injury. X-rays of claimant's left hip and pelvis were negative.

Dr. McElhinney testified that at that time his major concern was possible internal injury; therefore, he did not focus his examination on the hip problem. During claimant's hospitalization he was at bed rest and hip pain was therefore minimal. After claimant was released from the hospital, he complained to the doctor of hip pain. The doctor noted complainant walked with a limp and had some atrophy of the left thigh muscle. He was still experiencing those problems when Dr. McElhinney released him on January 16, 1973, to return to work.

In a letter to claimant's counsel, dated February 9, 1973, Dr. McElhinney stated that at the time he released claimant from his care, claimant was no longer disabled and was able to return to work. On direct examination he indicated his statement meant the burns had healed, as had the abdominal incision, and it did not refer to claimant's hip and leg problems. He testified that if claimant was continuing to have pain, weakness and limitation of motion in the hip and leg, that would constitute a disability. He did not have an opinion as to the degree of disability.

Larry E. Stout, D. C., testified that he treated claimant from March 30, 1973, until September 17, 1974; that claimant complained of pain in the left hip radiating into the groin area, a burning sensation between the shoulder blades, and numbness in the left eye; and that complainant indicated the pain he experienced in his left leg while walking subsequent to the accident had lessened but would not go away. Dr. Stout conducted the Fabere-Patrick test of the left hip socket, which produced pain in the left hip. X-ray examination revealed a curvature in the dorsal spine, malformation in the articulation of the lumbosacral joints causing instability of the back, an increase in the lumbosacral angle, and a narrowing of the posterior of the disc space between the fifth lumbar vertebra and the sacrum, all of which the doctor attributed to a sprain and strain injury to the low back as a result of the accident. Treatment resulted in some improvement of claimant's condition, but he continued to experience pain, weakness and limitation of motion in the left hip and leg.

Dr. Stout determined claimant had fifteen percent permanent partial general bodily disability, precluding work such as carrying heavy objects or climbing, which would aggravate the pain in the

left leg and hip; that bending and squatting would also aggravate his condition; and that it was doubtful future treatment would improve the condition.

Claimant testified that he went to work as a punch press operator when Dr. McElhinney permitted him to do so. Later, he became a welder and was so employed at the time of the hearing. He testified he experienced pain and weakness in his left hip and leg in lifting heavy objects while he welded; that when he dressed and was standing on his left leg to get his right leg into his pants, he had to hold on to something to steady himself; that fast walking and running movements were restricted because his legs tired out; that he had trouble climbing and stepping up on to objects; and that he had to stop occasionally to pop his hip into place. Based on these facts, he estimated his disability at thirty percent.

Claimant's father-in-law testified he had observed claimant since the accident and claimant could not play golf or hunt as he did before the accident because he couldn't walk that far anymore. Weather also seemed to affect claimant's hip and leg, as there were times when he limped worse than usual.

The record fails to disclose any evidence produced by respondent relative to claimant's injuries. The only evidence introduced by respondent related to the issue of whether claimant was an employee of respondent.

The primary purpose of the workmen's compensation act is to burden industry with the economic loss to a workman resulting from accidental injuries sustained by the workman in the course of his employment. (K. S. A. 44-501; *Craig v. Electrolux Corporation,* 212 Kan. 75, 510 P. 2d 138; *Thuillez v. Yellow Transit Freight Lines,* 187 Kan. 618, 358 P. 2d 676.) To make such legislative intent effectual, the courts are directed to interpret the act liberally in favor of the injured worker. (*Streff v. Goodyear Tire & Rubber Co.,* 211 Kan. 898, 508 P. 2d 495; *Chapman v. Victory Sand & Stone Co.,* 197 Kan. 377, 416 P. 2d 754; *Taylor v. Armour & Co.,* 186 Kan. 51, 348 P. 2d 632.)

In construing the act, our decisions have held that the loss of earning power of the workman is the theoretical basis for allowance of compensation. (*Gutierrez v. Harper Construction Co.,* 194 Kan. 287, 398 P. 2d 278; *Daugherty v. National Gypsum Co.,* 182 Kan. 197, 318 P. 2d 1012.) We have repeatedly stated that the correct standard for determining loss in earning capacity is the extent to which a workman's ability has been impaired to procure in the open

labor market and to perform and retain work of the same type and character he was able to perform before he was injured. (*Reichuber v. Cook Well Servicing*, 220 Kan. 93, 551 P. 2d 810; *Davis v. Winchester Packing Co.*, 204 Kan. 215, 460 P. 2d 617; *Gray v. Beller*, 199 Kan. 284, 428 P. 2d 833; *Mooney v. Harrison*, 199 Kan. 162, 427 P. 2d 457; *Puckett v. Minter Drilling Co.*, 196 Kan. 196, 410 P. 2d 414.) This rule has been followed even in those cases where the injured workman may actually earn a greater salary after the injury than he did before. (*McGhee v. Sinclair Refining Co.*, 146 Kan. 653, 659, 73 P. 2d 39.)

We have reviewed all the workmen's compensation cases appearing before this court and have failed to find a fact situation similar to the instant case. The distinction between functional disability and work disability has been accepted by this court in most instances without explanation. Functional disability is the loss of a part of the total physiological capabilities of the human body. Work disability is that portion of the job requirements that a workman is unable to perform by reason of an injury. Work disability generally carries a higher percentage of disability than functional disability. Many of our cases center around an effort on the part of the claimant to transpose a lower functional disability into a higher work disability. Out of these cases arose the standard for determining loss in earning capacity of an injured workman as hereinbefore stated. If we apply this standard strictly to the facts in this case, the claimant should be denied permanent partial disability. It was on this basis the district court denied compensation. Its memorandum decision stated:

". . . We do not have a claimant that has always engaged in occupations requiring hard physical exertion. Claimant here was a truck driver and after an accident engaged in an occupation requiring hard physical exertion and claims he cannot do 30% of what he could do before the accident. Since there is no evidence to suggest that claimant cannot perform the same labor he was able to perform prior to the injury, the Court would conclude that claimant has no[t] suffered a permanent partial disability."

The effect of the trial court's judgment could result in a denial of workmen's compensation benefits, even though the workman suffered a substantial injury, if he could not relate it to his work. This would be true of any sedentary employment such as a bookkeeper, cashier or bank teller receiving a non-scheduled injury. Upon a showing that this type of employee could perform his duties despite his injury, no compensation would be allowed.

Similarly, in the instant case, the absence of a showing that claimant was unable to resume duties he was performing at the time of the injury would be a bar to the allowance of compensation.

We question the logic of this result and doubt it fulfills the intent of the workmen's compensation act. We have heretofore stated that recovery for loss of earning power is a basic purpose of the act. In accordance with this principle we conclude a workman is entitled to recover an award equal to the percentage of his physiological capabilities lost by reason of an injury occurring within the scope of his employment. Stated more distinctly, he should recover his functional disability.

We believe the following illustration might serve to disclose the logic of our decision. Assume three employees of a construction company—a common laborer, a timekeeper, and a supervisor—were working on the same job. In the course of their employment and while traveling from one job site to another, they were involved in an automobile accident. The common laborer received a whiplash injury which resulted in a ten percent functional disability. The timekeeper sustained a serious leg injury, which required amputation above the knee. The supervisor suffered a back injury which required a laminectomy and a fusion, resulting in a twenty-five percent functional disability.

At the workmen's compensation hearing, the common laborer presented evidence to establish his ten percent functional disability resulted in a sixty percent work disability. The propriety of doing so is justified by our decisions of *Gray v. Beller,* supra; *Puckett v. Minter Drilling Co.,* supra; *Gutierrez v. Harper Construction Co.,* supra; and *Taber v. Tole Landscape Co.,* 188 Kan. 312, 362 P. 2d 17. If the proof is convincing to the trier of the facts, the laborer should recover an award based on a sixty percent permanent partial disability.

At the timekeeper's compensation hearing, he established that he received a scheduled injury for the loss of his leg. Because he was not required to prove his scheduled injury affected his work ability, he was entitled to recover compensation under the schedule. (*Gross v. Herb Lungren Chevrolet, Inc.,* 220 Kan. 585, 587, 552 P. 2d 1360.)

At the hearing for the supervisor, it is established that he received an injury during the course of his employment, resulting in a twenty-five percent functional disability. He failed to establish

that the injury affected his ability to obtain or retain employment of the same or similar nature as he had at the time of the accident. Under the rationale of the trial court, he would receive no compensation (other than temporary partial or temporary total disability and medical) because he failed to relate his injury to his work. This would be true even though two co-workers injured in the same accident received awards.

The plight of the supervisor is analogous to the position of claimant in the instant case. He, too, was denied recovery because he did not relate his functional disability to work disability. Applying the rules of construction heretofore set forth, it would appear it was not the intent of the legislature to deny recovery to the supervisor and permit recovery by the common laborer and timekeeper. Giving consideration to the purpose of the act and to the heretofore stated rules of liberal construction, the foregoing illustration supports the logic of our belief that the supervisor in the illustration and the claimant in the instant case should be entitled to recover an award equal to the percentage of functional disability irrespective of its relationship to work disability.

We are charged with the rule that we should consider all the testimony in the light most favorable to the prevailing party below and if the record contains any evidence which supports the trial court's judgment, that judgment must be affirmed. (*Silvers v. Wakefield,* 176 Kan. 259, 270 P. 2d 259.) We cannot apply this rule where the evidence is uncontradicted. In *Berry v. Wondra,* 173 Kan. 273, 246 P. 2d 282, this court said:

"Uncontradicted evidence which is not improbable or unreasonable cannot be disregarded unless shown to be untrustworthy, and is ordinarily regarded as conclusive." (Syl. 3.)

The evidence before the district court was uncontradicted that claimant suffered a functional disability which was permanent in nature. We cannot say the evidence was inherently improbable, unreasonable, self-contradictory, or inconsistent with facts or circumstances in evidence. For this reason we believe it proper to reverse the judgment of the district court and remand the case, with instructions to determine the percentage of functional disability based on the record and enter an award in accordance with the determination.

Turning to the cross-appeal, we face the issue of whether claimant was an employee of the respondent sand company. The dis-

trict court found an employer-employee relationship existed. The scope of review of such an issue was set forth in *Jones v. City of Dodge City*, 194 Kan. 777, 402 P. 2d 108:

"Under K. S. A. 44-556, the appellate jurisdiction of this court in workmen's compensation cases is limited to reviewing questions of law only. Whether the district court's judgment in a compensation case is supported by substantial competent evidence is a question of law as distinguished from a question of fact. (*Holler v. Dickey Clay Mfg. Co.*, 157 Kan. 355, 139 P. 2d 846, 148 A. L. R., Anno., 1131; *Coble v. Williams*, 177 Kan. 743, 747, 282 P. 2d 425; *Bowler v. Elmdale Developing Co.*, 185 Kan. 785, 347 P. 2d 391.) In reviewing the record to determine whether it contains substantial evidence to support the district court's factual findings, this court is required to review all of the evidence in the light most favorable to the prevailing party below. Where the findings of fact made by the district court are based on substantial evidence, they are conclusive, and we have no power to weigh the evidence and revise those findings or reverse the final order of the court. Although this court may feel the weight of the evidence, as a whole, is against the findings of fact so made, it may not disturb those findings if they are supported by substantial competent evidence. . . ." (pp. 778-79.)

The test for determining whether an employer-employee relationship exists is whether the employer has the right of control and supervision over the work of the alleged employee and whether the employer has the right to direct the manner in which the work is to be performed, as well as the result which is sought to be accomplished. (*Scammahorn v. Gibraltar Savings & Loan Assn.*, 197 Kan. 410, 416, 416 P. 2d 771; *Atwell v. Maxwell Bridge Co.*, 196 Kan. 219, 224, 409 P. 2d 994; *Jones v. City of Dodge City*, supra at 779-80; *Snyder v. Lamb*, 191 Kan. 446, 448, 381 P. 2d 508; *Mendel v. Fort Scott Hydraulic Cement Co.*, 147 Kan. 719, 723, 78 P. 2d 868.)

The employer-employee relationship has been established applying the above stated test, in several cases involving owner-drivers of trucks. *Knoble v. National Carriers, Inc.*, 212 Kan. 331, 510 P. 2d 1274; *Watson v. Dickey Clay Mfg. Co.*, 202 Kan. 366, 450 P. 2d 10; *Wilbeck v. Grain Belt Transportation Co.*, 181 Kan. 512, 313 P. 2d 725; *Shay v. Hill*, 133 Kan. 157, 299 Pac. 263.)

We believe the record contains sufficient competent evidence to support the finding of the district court. The record indicates hauling sand was an inherent part of respondent's business operation. On many occasions respondent selected the route the truck owned by claimant was to take. Respondent determined the kind and quantity of material to be loaded into the truck, where each load was to be taken, and the quantity of sand to be spread upon roads when claimant unloaded. Under these circumstances the fact

claimant owned his own truck, paid his own expenses, and sometimes chose his own routes, is of little significance.

The judgment of the district court is reversed with directions on the appeal and affirmed on the cross-appeal.

FROMME, J., dissenting.

This court under the guise of liberal construction of the Workmen's Compensation Act should not change a long-established statutory and decisional rule merely to assist a claimant in obtaining an award when he has failed to establish by evidence his entitlement to such an award under established law.

The Act does not recognize functional disability as the test to be used in determining an award for permanent partial disability. Loss of earning power of the workman is, and has been, the theoretical basis for allowance of compensation until the present majority opinion was written.

In G. S. 1949, 44-510 (3) (22) the legislature provided:

". . . In case of . . . permanent partial disability . . . the workman shall receive . . . 60 percent of the difference between the amount he was earning prior to said injury . . . and the amount he is able to earn after such injury in any employment, . . ."

In 1972 when claimant's injury occurred the legislative direction appeared in K. S. A. 44-510e as follows:

". . . In case of . . . permanent disability . . . the workman shall receive . . . sixty percent (60%) of the difference between the amount he was earning prior to said injury . . . and the amount he is able to earn after such injury in employment, . . ."

Under the law effective July 1, 1974 (K. S. A. 1975 Supp. 44-510e) the legislature states:

". . . The extent of permanent partial general disability shall be the extent, expressed as a percentage, to which the ability of the workman to engage in work of the same type and character that he was performing at the time of his injury, has been reduced. . . ."

Mr. Justice Owsley in June of this year, speaking for the court, stated:

". . . The test for determining the disability of an injured workman is the extent to which his ability has been impaired to procure in the open labor market, and to perform and retain work of the same type and character he was capable of performing before his injury. . . ." (*Reichuber v. Cook Well Servicing,* 220 Kan. 93, p. 96, 551 P. 2d 810).

This rule was based on the statutory provisions in K. S. A. 44-510e and has been expressed and adhered to in all our previous cases.

Functional disability has been examined and consistently rejected by this court as not a proper measure of permanent partial disability compensable under the Act.

In *Gray v. Beller,* 199 Kan. 284, 428 P. 2d 833, there was testimony of functional disability of 15% but there was additional testimony of loss of earning power under the work disability test. This court affirmed a district court's finding of 50% permanent partial disability and held that functional disability was not the proper measure of compensable disability.

In *Davis v. Winchester Packing Co.,* 204 Kan. 215, 460 P. 2d 617, the respondents argued the loss of function of 15%, as found by the doctor, and the partial disability of 75% as found by the district court, must have some correlation. The argument was rejected by this court.

In *Elliott v. Rains & Williamson Oil Co.,* 213 Kan. 340, 516 P. 2d 1004, there was evidence of 15% permanent partial disability and 10% impairment of function of the body. The trial court's award of 15% was affirmed by this court after applying the test of work disability.

In *Webb v. Globe Construction Company,* 213 Kan. 681, 518 P. 2d 419, the claimant's principal contention on appeal was that the district court's 32½% award was based solely on testimony of functional disability when there was other testimony of permanent partial disability ranging from 25% to 75%. We reaffirmed the work disability test and affirmed the trial court's award.

In *Gross v. Herb Lungren Chevrolet, Inc.,* 220 Kan. 585, 552 P. 2d 1360, we recently pointed out that in scheduled injuries ratings under K. S. A. 44-510d are expressed in terms of "loss of the use" which is functional loss. We rejected the argument that work disability should be used to determine a scheduled injury award. Referring to the work disability rule we say:

". . . This rule has been applied exclusively in cases involving general bodily disability, not scheduled injuries." (220 Kan. p. 586.)

In face of the long legislative pronouncement on the test to be used in arriving at the extent of an award for permanent partial general disability the majority opinion legislates a new rule and overturns the prior decisions of this court. This can have but one effect. It will add confusion to the body of decisional law and create many more questions for the appellate courts of this state to decide.

The majority opinion points out that the record in this case fails to disclose any evidence of work disability, in that claimant made no effort to relate the extent of his injury to the type and character of work he was able to perform before he was injured. There was a total lack of evidence on this necessary issue. The claimant has the burden of proving his entitlement to an award. See *Meyers v. Consolidated Printing & Stationery Co.*, 201 Kan. 806, 809, 443 P. 2d 319. The burden of proof as previously declared in the decisions of this court is now mandated by K. S. A. 1975 Supp. 44-501. The claimant in the present case failed in his proof, and this court to compensate for his failure now adopts a second test of disability which in the future must be considered in arriving at an award for permanent partial bodily disability. In effect we say the trial court in the absence of evidence of work disability must award permanent partial bodily disability based upon evidence of functional disability. This flies directly in the face of our statutory law.

What will be the ultimate effect of such a holding when evidence of functional disability is 15% and evidence of work disability is 50% as in *Gray v. Beller,* supra, or when evidence of functional disability is 45% and evidence of work disability runs from 25% to 75% as in *Webb v. Globe Construction Company,* supra? If evidence of functional disability will support an award it must be acknowledged that it has probative value in determining every award. Sooner or later we will be forced to re-examine our decision in *Davis v. Winchester Packing Co.,* supra, and declare some correlation between testimony of functional disability and testimony of work disability. The holding in paragraph one of the syllabus may be interpreted two ways. First, it may indicate that the percentage of functional disability is to be used as the test when there is no evidence of work disability or second, it may very well indicate to the trial courts that the percentage of functional disability controls the minimum amount of an award for permanent partial disability.

The difficulty in applying the new rule, which recognizes that evidence of functional disability will support an award for permanent partial disability, is apparent. There is no correlation between the percentage of functional disability and the percentage of work disability when one examines our prior cases. The evidence may indicate a small percentage of functional disability and a large percentage of work disability. In other cases a substantial per-

centage of functional disability has resulted in a smaller percentage of work disability. Under this new rule a claimant is free to choose the basis upon which he claims compensable disability. Work disability is no longer the test.

The trial court in the present case denied an award for permanent partial bodily disability saying:

"The facts in this case are unlike those in the Puckett case. We do not have a claimant that has always engaged in occupations requiring hard physical exertion. Claimant here was a truck driver and after an accident engaged in an occupation requiring hard physical exertion and claims he cannot do 30% of what he could do before the accident. Since there is no evidence to suggest that claimant cannot perform the same labor he was able to perform prior to the injury, the Court would conclude that claimant has not suffered a permanent partial disability."

The trial court was eminently correct in its application of the law. The claimant failed to introduce evidence which would support an award.

In the wake of the present decision the bench and the bar of this state will be totally confused in an area of the law which has heretofore been relatively certain. Is the 1974 legislative direction in K. S. A. 1975 Supp. 44-510e that "the extent of permanent partial general disability shall be the extent, expressed as a percentage, to which the ability of the workman to engage in work of the same type and character that he was performing at the time of his injury, has been reduced" now repealed by this court? If so, the repeal was effected without reference or comment on the statute which was not yet in effect when claimant received his injury.

Accordingly I dissent from paragraph one of the syllabus and the corresponding portion of the opinion. I would affirm on both appeal and cross appeal.

MILLER, J., joins in the foregoing dissenting opinion.