(579 P.2d 725)

No. 49,457

EDWARD LEE WILSON, Claimant, *Appellant and Cross-Appellee,* v. MORIDGE MANUFACTURING, INC., Respondent and UNITED STATES FIDELITY AND GUARANTY COMPANY, Insurance Carrier, *Appellees and Cross-Appellants.*

Opinion filed June 9, 1978.

*Ralph J. Thorne,* of Rauh, Thorne, Robinson & Childs, of Hutchinson, for appellant and cross-appellee.

*Aubrey G. Linville,* of Clark, Mize & Linville, Chartered, of Salina, for appellees and cross-appellants.

Before SPENCER, P.J., REES and MEYER, JJ.

REES J.: The parties have appealed from a workmen's compensation award for permanent partial disability. Claimant contends there was incorrect computation of his average gross weekly wage. Respondent employer and its insurance carrier contend the finding of 50% permanent partial general disability was erroneous.

In line with a practice that has achieved some acceptance by both employers and employees, respondent's employees' regular work week was four days rather than the traditional five days. At the time of his accident, April 3, 1975, claimant was a full-time hourly employee as defined by K.S.A. 1974 Supp. 44-511(*a*)(5) (now 1977 Supp.); the customary number of hours constituting his ordinary working day was ten hours; the customary number of hours constituting his ordinary working week was forty hours; and his straight-time hourly rate was $3.90. The examiner, the

director and the district court each computed claimant's average gross weekly wage to be $156 by multiplying his straight-time hourly rate, $3.90, by the number of hours constituting his ordinary working week, forty hours. Claimant argues this computation was erroneous.

In pertinent part, K.S.A. 1974 Supp. 44-511(*b*) (now 1977 Supp.) is as follows:

"(*b*)  The employee's average gross weekly wage for the purpose of computing any compensation benefits provided by the workmen's compensation act shall be determined as follows:

.  .   .   .

"(4)  If at the time of the accident the employee's money rate was fixed by the hour, the employee's average gross weekly wage shall be determined as follows:  .  .  .  (B) if the employee is a full-time hourly employee, as defined in this section, the average gross weekly wage shall be determined as follows: (*i*) A daily money rate shall first be found by multiplying the straight-time hourly rate applicable at the time of the accident, by the customary number of working hours constituting an ordinary day in the character of work involved; (*ii*) the straight-time weekly rate shall be found by multiplying the daily money rate by five (5), or if the employee usually and regularly worked, or was expected to work, more than five (5) days per week, then by multiplying the daily money rate by such number of days and half days in excess of five (5) days;  .  .  ."

Computation of the average gross weekly wage pursuant to K.S.A. 1974 Supp. 44-511(*b*) produces the following results in this case:

(a)  Daily money rate is $39.00 ($3.90 times 10 hours); and
(b)  Straight-time weekly rate is $195.00 ($39.00 times 5 days).

There is included in claimant's straight-time weekly rate ten hours of straight-time hourly wages for which he did not actually work and which he was never actually paid in any working week. Although the statute provides for computation of the straight-time weekly rate by application to the daily money rate of multipliers of five or greater, it makes no provision for multiplication of the daily money rate by a multiplier less than five.

Review of our case law and current administrative rules and regulations promulgated by the workmen's compensation director (now the director of workers' compensation) provides no guidance for determination of the issue before us. However, as of the date of claimant's accident, there existed an administrative rule that arguably tends to support claimant's construction of K.S.A. 1974 Supp. 44-511. That rule provided in pertinent part:

". . . [T]he customary number of working days per week must be established. The act provides that the customary number of working days per week shall be established by that number which the employee worked 'regularly,' but in no case, for the purpose of computing the weekly wage, shall less than five days be used. . . .

. . . .

"It must be borne in mind that the weekly wage on which compensation is to be predicated may in some cases exceed the actual wage, as where less than five days per week are worked. . . ." (Kan. Adm. Reg. 51-11-1, revoked May 1, 1975.)

Despite the language of K.S.A. 1974 Supp. 44-511(*b*), the examiner, the director and the district court all limited claimant's straight-time weekly rate to $156 ($3.90 times 40 hours). None of the three cite authority for their computation.

We understand respondent and its insurer to argue this computation is correct on two bases. First, an award founded on claimant's proposed computation would result in an unjust award, that is, an award based upon wages not earned, paid or bargained for. Secondly, respondent and its insurer refer to the K.S.A. 1974 Supp. 44-511(*a*)(5) definition of "full-time hourly employee" as one who is employed in a "trade or employment where the customary number of hours constituting an ordinary working day is eight (8) or more hours per day *or the number of hours constituting an ordinary working week is forty (40) or more* hours per week . . ." (Emphasis supplied). From this it seemingly is argued that the straight-time weekly rate is to be computed by multiplying the straight-time hourly rate by forty.

We believe K.S.A. 1974 Supp. 44-511(*b*) is controlling. We cannot ignore its specific and mandatory language. Adoption of respondent's second argument would be in clear contravention of that language. Further, K.S.A. 1974 Supp. 44-511(*a*)(5) concerns the definition of a full-time hourly employee and is not directed to computation of the employee's average gross weekly wage. Our Supreme Court has noted in the past that the fact the application of workmen's compensation statutes may seem to operate unjustly affords no grounds for the courts to substitute rules different from those enacted by the legislature. If a practical operation of the law is found to bring disproportionate or unjust results, it may be assumed that the legislature will amend it, but that function belongs to that body alone. *Wammack v. Root Manufacturing Co.,* 184 Kan. 367, 373, 336 P.2d 441 (1959); *Anderson v. Oil & Refining Co.,* 111 Kan. 314, 316, 206 Pac. 900 (1922).

We conclude that the district court erred in not computing claimant's average gross weekly wage in accordance with the provisions of K.S.A. 1974 Supp. 44-511.

On cross-appeal, respondent and its insurance carrier contend there was no substantial competent evidence to support the trial court finding that claimant has suffered a 50% permanent partial general disability. They rely upon the fact the medical testimony was that claimant has only a 20% functional disability. They emphasize there was no medical testimony that the claimant could not procure work in the open labor market and perform and retain work of the same type and character he was performing at the time of his injury.

It is not the function of this court to judge the credibility of witnesses in workmen's compensation cases or to determine what weight should be given their testimony. The test on appeal is whether the record contains any substantial competent evidence which on any theory of credence justifies the trial court findings. *Day and Zimmerman, Inc. v. George,* 218 Kan. 189, 194, 542 P.2d 313 (1975); *Makalous v. Kansas State Highway Commission,* 222 Kan. 477, Syl. 9, 565 P.2d 254 (1977); *Rund v. Cessna Aircraft Co.,* 213 Kan. 812, 518 P.2d 518 (1974).

Our review of the record indicates there is substantial competent evidence to support the finding of 50% permanent partial disability. Claimant testified that upon resuming work as a welder, after back surgery necessitated by his injury, he experienced great pain in his back and hip; he could not remain on his feet for very long and had to work short days and short hours because of the pain; he could not do 70% to 80% of the work he had performed for the respondent prior to the injury; he was ultimately forced to quit his job with the respondent because he could no longer do the work; upon leaving respondent's employ, he obtained a job as an electrician; although his new job involved lighter work, he still experienced pain in his back and hip while attempting to climb, crawl or bend over; he was ultimately forced to quit that job as well, due to the pain. He finally obtained a job as a driver of an escort car for a trailer company; and he continued to experience pain in his back and hip while driving. The doctors who examined claimant following the accident testified he could expect continuing pain in his back as long as he engaged in heavy lifting, stooping and bending, and climbing.

The fact that the two doctors fixed his functional disability at 20% is not controlling. The Supreme Court has on several occasions upheld trial court decisions wherein the percentage of permanent partial disability assessed was in excess of the medical testimony concerning the percentage of functional disability. *Davis v. Winchester Packing Co.,* 204 Kan. 215, 460 P.2d 617 (1969); *Puckett v. Minter Drilling Co.,* 196 Kan. 196, 410 P.2d 414 (1966); *Mooney v. Harrison,* 199 Kan. 162, 427 P.2d 457 (1967); *Gray v. Beller,* 199 Kan. 284, 428 P.2d 833 (1967).

That there may not have been expert medical testimony that claimant could not obtain work in the open labor market or could not perform all or part of his prior job is not controlling. A trial court or fact-finding body is not required to limit its consideration of a workman's injury to the testimony of expert medical witnesses. *Mooney v. Harrison,* supra, p. 165; *Hanna v. Edward Gray Corporation,* 197 Kan. 793, 800, 421 P.2d 205 (1966).

There being substantial competent evidence in the record to support the trial court's finding of 50% permanent partial disability, that finding will be upheld on appeal.

Affirmed as to the cross-appeal. Reversed as to the appeal with direction to enter judgment in accord with this opinion.