(696 P.2d 405)
No. 56,440

DELBERT SAFFER, *Appellant*, v. BLACKSTONE DRILLING, INC., and BITUMINOUS INSURANCE COMPANY, *Appellees*.

Opinion filed February 28, 1985.

*Jack O. Bowker,* of McPherson, for appellant.

*Douglas D. Johnson,* of Kassebaum & Johnson, of Wichita, for appellees.

Before SWINEHART, P.J., ABBOTT and PARKS, JJ.

ABBOTT, J.: This is an appeal in a workers' compensation case. The claimant, Delbert Saffer, appeals, questioning only the method used to compute his average weekly wage.

The salient facts are undisputed. Claimant worked for the respondent, Blackstone Drilling, Inc., (Blackstone) as a "truck pusher" before his retirement. His primary job was to oversee the transportation and assembly of oil drilling rigs and pumps.

Claimant retired in March of 1980, and from time to time after that he filled in for vacationing employees of Blackstone.

In June of 1981, Blackstone's "truck pusher" took two weeks' vacation time and arrangements were made for claimant to work for *two weeks*, beginning Monday, June 22, 1981. Claimant was injured two days after commencing work. The nature and extent of his injury and disability are not in issue.

Claimant contends his compensation should be based on an average weekly wage of $511, or in the alternative what the average weekly wage of the "truck pusher" he was filling in for would have been if the regular "truck pusher" had been injured. The $511 figure is based on 40 hours of regular pay at $7 per hour and 16 hours of overtime at $10.50 per hour plus $9 per day per diem based on 8 hours per day, 7 days per week.

The administrative law judge found that the hiring contract

was for two weeks of full-time work of 56 hours per week at $7 per hour for 40 hours and time and a half thereafter, plus $9 per day for each 8-hour day worked; that claimant did not intend to work longer, nor was he engaged with the possibility of doing so. The administrative law judge also found that:

"Claimant put in a full day's work every day he did work, so that he was not 'part-time hourly'; and he was engaged only for specific limited times and employment, so that he was not a 'full-time hourly' employee. Moreover, the terms of his employment were not indefinite, 'until further notice', and as he was not engaged as a permanent part-time or full-time employee, the computation of average gross weekly wage falls outside K.S.A. 44-511(a)(4) and (5), but within K.S.A. 44-511(b)(5), regarding determination by the Director where, as here, Claimant was employed for less than one calendar week immediately preceding the accident, as there is no question Claimant was not "employed" by Respondent, or on call, in that he filled in for absent employees only at his pleasure, and Respondent's specific request, and the only compensation paid was for hours actually worked in performance of such agreement."

The administrative law judge found that claimant had previously worked for Blackstone; he then took the total wages paid to the date of the accident and divided by the weeks elapsed since the first day of employment in 1981 and arrived at a compensation rate of $44.99 per week. The reason for the low average weekly wage arrived at is because claimant had worked a total of only 71 hours during the 11.43 weeks immediately preceding his injury. During that period he worked part of 4 weeks, but never a full week. He worked 18 hours, 11 hours, 42 hours and 25 hours (the two days before the accident) in each of the 4 weeks, for which he drew a total wage of $672 plus per diem allowance of $99 for a total of $771. Those 96 hours were worked during a 11.43-week period, and the administrative law judge divided the $771 earned by 11.43 weeks to arrive at a gross average weekly wage of $67.45 and a compensation rate of $44.99.

Director's review was not requested. The trial judge adopted the administrative law judge's findings of fact and conclusions of law with one minor change which is not germane to this appeal.

Claimant appeals, contending that any worker hired to work forty hours or more per week is a full-time employee pursuant to K.S.A. 44-511(a)(5), and thus claimant is entitled to the maximum rate per week.

Blackstone takes the position that the computation of "average

weekly wage" provided by K.S.A. 44-511 does not adequately cover the unique factual circumstances, and that a fair and accurate resolution of this case requires us to make a determination that is not specifically mentioned in the Workmen's Compensation Act, and that is whether the employment is "temporary" or "permanent" in character. Blackstone suggests that the language of K.S.A. 44-511(b)(4) and (5) is consistent with his argument.

A practical consideration is that a worker who is covered by the Workmen's Compensation Act loses the right to seek common-law damages from an employer. The legislature surely considered that element in adopting a scheme for computing average weekly wage; it would not have taken away a worker's common-law action and replaced it with a system that would possibly reduce a worker's compensation recovery to a mere pittance for a catastrophic injury. Some states cover this possibility by excluding "casual" workers from compensation coverage, thus preserving their common-law action. Kansas does not do so. Regardless, claimant's contract of employment was for 112 hours, which would take him out of "casual" status in those states whose statutes we have examined.

The fundamental rule of statutory construction is that the purpose or intent of the legislature governs when it can be ascertained from the statute. *State v. Dumler*, 221 Kan. 386, Syl. ¶ 1, 559 P.2d 798 (1977). This court cannot nullify legislative will nor concern itself with the wisdom of legislative policy. *In re Estate of Bowman*, 172 Kan. 17, 22, 238 P.2d 486 (1951). Our function is to ascertain legislative intent.

In 1955, G.S. 1949, 44-511 was amended to provide for a minimum work week of 5 days; and if an employee worked a single day on a job, the average weekly wage was found by multiplying the daily wage by 5 (or, if the worker worked more than 5 days a week, by the customary number of days worked). Thus, the 1955 act made some part-time employees into full-time employees for compensation purposes. *Zeitner v. Floair, Inc.*, 211 Kan 19, 505 P.2d 661 (1973). The year following the *Zeitner* opinion, the legislature revised 44-511 (L. 1974, ch. 203, § 18) so that 44-511(a)(4) and (5) and 44-511(b)(4) and (5) were worded in substantially the same way they are today. The statute was amended in 1977 (L. 1977, ch. 175, § 3) and again in 1979 (L.

1979, ch. 156, § 9). Neither the 1977 nor 1979 amendments have any direct bearing on our quest to determine legislative intent concerning the facts before us.

The pertinent parts of K.S.A. 44-511 are:

"(a) As used in this section:

. . . .

"(4) The term 'part-time hourly employee' shall mean and include any employee paid on an hourly basis: (A) Who by custom and practice or under the verbal or written employment contract in force at the time of the accident is employed to work, agrees to work, or is expected to work on a regular basis less than forty (40) hours per week; and (B) who at the time of the accident is working in any type of trade or employment where there is no customary number of hours constituting an ordinary day in the character of the work involved or performed by the employee.

"(5) The term 'full-time hourly employee' shall mean and include only those employees paid on an hourly basis who are not part-time hourly employees, as defined in this section, and who are employed in any trade or employment where the customary number of hours constituting an ordinary working week is forty (40) or more hours per week, or those employees who are employed in any trade or employment where such employees are considered to be full-time employees by the industrial customs of such trade or employment, regardless of the number of hours worked per day or per week.

"(b) The employee's average gross weekly wage for the purpose of computing any compensation benefits provided by the workmen's compensation act shall be determined as follows:

. . . .

"(4) If at the time of the accident the employee's money rate was fixed by the hour, the employee's average gross weekly wage shall be determined as follows: (A) If the employee was a part-time hourly employee, as defined in this section, the average gross weekly wage shall be determined in the same manner as provided in paragraph (5) of this subsection; (B) if the employee is a full-time hourly employee, as defined in this section, the average gross weekly wage shall be determined as follows: (i) A daily money rate shall first be found by multiplying the straight-time hourly rate applicable at the time of the accident, by the customary number of working hours constituting an ordinary day in the character of work involved; (ii) the straight-time weekly rate shall be found by multiplying the daily money rate by the number of days and half days that the employee usually and regularly worked, or was expected to work, but forty (40) hours shall constitute the minimum hours for computing the wage of a full-time hourly employee; (iii) the average weekly overtime of the employee shall be the total amount earned by the employee in excess of the amount of straight-time money earned by the employee during the twenty-six (26) calendar weeks immediately preceding the date of the accident, or during the actual number of such weeks the employee was employed if less than twenty-six (26) weeks, divided by the number of such weeks; and (iv) the average gross weekly wage of a full-time hourly employee shall be the total of the straight-time weekly rate, the average weekly overtime and the weekly average of any additional compensation."

The Supreme Court has said many times that the Workmen's Compensation Act is complete in itself. We must therefore look to the above language in computing the benefits due this claimant. Whether claimant was a "temporary" or "permanent" employee is immaterial unless the language of the statute can be read to make it material. Likewise, what we consider to be fair and equitable under the circumstances is not the determinative factor.

In *McMechan v. Everly Roofing, Heating & Air Conditioning, Inc.*, 8 Kan. App. 2d 349, 350, 656 P.2d 797, *rev. denied* 233 Kan. 1092 (1983), a panel of this court held that 44-511(a)(4) and (5) are mutually exclusive, so that if an employee is not *part-time*, he must be *full-time*. The act makes no separate provision for temporary workers or workers who limit their participation in the labor market. The legislature obviously intended that such persons be either part-time hourly employees or, if they do not fit that definition, be full-time hourly employees.

Here, the trial court and administrative law judge determined that claimant was not a part-time hourly employee pursuant to K.S.A. 44-511(a)(4), and we agree with that determination. They also determined that claimant was not a full-time hourly employee because he was engaged for a limited time. The trial judge and administrative law judge apparently relied on *Campbell v. Industrial Acc. Com.*, 95 Cal. App. 2d 570, 213 P.2d 395 (1950) and 2 Larson's Workmen's Compensation § 60.20 (Desk ed. 1984).

Our Supreme Court has said many times that workers' compensation cases from other jurisdictions are usually of little help in Kansas because of the difference in statutory language. We believe that to be the situation here.

In *Campbell*, reference was made to the California Labor Code, section 4453, and it was stated that the formula for determining average weekly earnings fell into four categories designated (a), (b), (c) and (d). Subsection (d) provided that it applied "where for any reason the foregoing methods of arriving at the average weekly earnings cannot reasonably and fairly be applied." 95 Cal. App. 2d at 573. Thus, in *Campbell*, the California legislature had provided an alternative when an employee did not precisely fit its definition of a part-time or full-time hourly employee. *Campbell* is therefore no authority for us to say in this

case that it is not reasonable and fair to hold claimant is a full-time hourly employee.

We have also examined the cases cited in Larson's. The New York cases are based on a statute that requires a different formula when the worker voluntarily and for long periods of time limits his or her participation in the labor market. See *Pfeffer v. Parkside Caterers, Inc.*, 53 App. Div. 2d 753, 384 N.Y.S.2d 513 (1976) *aff'd* 42 N.Y.2d 59 (1977); *Mtr. of Jacob v. Tn. of Glenville*, 43 App. Div. 2d 409, 352 N.Y.S.2d 265 (1974); N.Y. Work. Comp. § 14(3) (McKinney 1965). Larson's cites no cases that deal with a factual situation similar to the one before us. In fact, it states:

"It is difficult to see the justification of these cases that knowingly inflate benefits beyond what the claimant intended to earn in the past and presumably intended to continue to earn in the future, *as long as there is any sort of residual or catchall clause that is available when the more mechanical formulas cannot fairly be applied.*" 2 Larson's Workmen's Compensation § 60.20, p. 10-150 (emphasis supplied).

K.S.A. 44-511(a)(5) does not limit its definition of full-time hourly employees to those hired for an indefinite period and makes no alternative provision to cover an employee who voluntarily and for long periods of time limits his or her participation in the labor market, nor is there statutory authority for another method if the trier of fact determines it is not fair and reasonable to use either 44-511(a)(4) or (5). Viewing the record before us and based on the facts of this case, we are of the opinion that 44-511(a)(5) more closely fits legislative philosophy and reflects legislative intent.

Blackstone argues that for us to hold as we have will bring about an unjust result. This court stated in *Wilson v. Moridge Mfg., Inc.*, 2 Kan. App. 2d 374, 579 P.2d 725 (1978):

"Our Supreme Court has noted in the past that the fact the application of workmen's compensation statutes may seem to operate unjustly affords no grounds for the courts to substitute rules different from those enacted by the legislature. If a practical operation of the law is found to bring disproportionate or unjust results, it may be assumed that the legislature will amend it, but that function belongs to that body alone." 2 Kan. App. 2d at 376, citing *Wammack v. Root Manufacturing Co.*, 184 Kan. 367, 373, 336 P.2d 441 (1959); *Anderson v. Oil & Refining Co.*, 111 Kan. 314, 316, 206 Pac. 900 (1922).

We thus hold that the trial court erred in computing the average weekly wage.

Reversed and remanded with directions to compute the claimant's average weekly wage pursuant to K.S.A. 44-511(a)(5) and (b)(4).