(696 P.2d 977)
No. 57,384

PAUL JUSTYNA, *Appellant*, v. LOGAN CONSTRUCTION COMPANY, BITU-
MINOUS CASUALTY COMPANY, and WORKERS' COMPENSATION FUND,
*Appellees.*

Opinion filed
March 21, 1985.

*John M. Ostrowski*, of McCullough, Wareheim & LaBunker, of Topeka, for the
appellant.

*Mark E. Kolich*, of Mustain & Newman, Chartered, of Kansas City, for the
appellees Logan Construction Company and Bituminous Casualty Company.

*Chris Miller*, staff attorney, and *Brock R. McPherson*, of McPherson, Bauer,
Pike & Pike, Chtd., of Great Bend, for the appellee Workers' Compensation
Fund.

Before FOTH, C.J., SWINEHART and BRISCOE, JJ.

FOTH, C.J.: In this workers' compensation case the issue is how
to compute the worker's "average weekly wage" where the
employer is a closely held corporation partially owned by the
claimant, which actually pays a lower wage than that nominally
called for by the employment contract. The administrative law
judge, the director, and the trial court all held that the worker's
"wage" was the amount actually received rather than the nomi-
nal amount. The claimant appeals; we affirm.

Claimant's injury, about which there is no dispute on appeal,
occurred October 4, 1982. His employer was a corporation he
formed in 1980 with Ron Gerard to do cement contracting.
Claimant owned 25 percent of the stock and served as secretary-
treasurer. Gerard owned 75 percent and was president. The two

were the only permanent employees, with additional workers hired only for specific contracts.

Claimant's initial wage was $350.96 per week, and was paid from July 1980 through July 1981. Claimant and Gerard then agreed to a wage of $315.00 per week. However, in weeks when the corporation's cash flow was insufficient claimant drew less than $315.00, and in some weeks he drew nothing. There was no evidence that any deficiencies were ever made up or that there was any intent that they be made up. During the 26 weeks preceding the injury of October 4, 1982, claimant received a wage in each of 21 weeks, totalling $5,460.50. Based on these actual wages received the tribunals below found claimant's average weekly wage was $260.02.

Claimant alleges the court erred in determining that his average weekly wage was the amount of money he actually received and not the amount the corporation agreed to pay him in weekly wages. The controlling statute is K.S.A. 44-511. It first defines "wage" as follows:

> "The term 'wage' shall be construed to mean the total of the money and any additional compensation which the employee receives for services rendered for the employer in whose employment the employee sustains an injury by accident arising out of and in the course of such employment." K.S.A. 44-511(a)(3); emphasis added.

However, in contending that his average weekly wage was the $315.00 the corporation agreed to pay him and not what he actually received in wages, claimant relies on K.S.A. 44-511(b)(3):

> "If at the time of the accident, the money rate is fixed by the week, *the amount so fixed*, plus the average weekly value of any additional compensation and the value of the employee's average weekly overtime as computed in paragraph (4) of this subsection, *shall be the average gross weekly wage.*" Emphasis added.

From the emphasized language in (b)(3) claimant argues that "fixed" means an agreed upon rate, regardless of whether that amount is paid or intended to be paid. This is a too literal reading of (b)(3), and one which ignores the subsection's place in the statutory scheme.

Under the workers' compensation act accidental injuries are compensated on the basis of the worker's "average gross weekly wage." K.S.A. 44-511(b), among other things, tells how to compute a "weekly wage" where the worker's compensation is paid

with reference to different time periods or depends on factors other than time. Thus, (b)(1) covers the worker with an annual salary ("fixed by the year"); (b)(2) covers the monthly salary ("fixed by the month"); (b)(3) covers the weekly salary ("fixed by the week"); (b)(4) covers the hourly employee ("fixed by the hour"); and (b)(5) covers the piece worker ("fixed by the output of the employee, on a commission or percentage basis, on a flat-rate basis for performance of a specified job, or on any other basis where the money rate is not fixed by the week, month, year or hour").

In each of the cases the "fixed" wage is certainly the agreed upon wage for the agreed upon period of time or other factor. However, the fixed "wage" is, by virtue of K.S.A. 44-511(a)(3), the money the employee "received." When the two subsections are read together it becomes apparent that a wage "fixed" by the week is one that is not only agreed to in amount by the employer and employee but one which each expects to be paid.

In this case the parties agreed to a $315.00 weekly wage, but only on an implied condition that the employer made enough to pay it. If cash was short, the employee-owner took varying smaller amounts or nothing at all, and never looked to the corporation to make up any deficiencies. The $315.00 was simply a lid on the weekly wage, and not the actual "fixed" weekly amount. There in fact was no "fixed" rate of compensation.

Under these circumstances (b)(5) comes into play, governing cases where "the money rate is not fixed by the week, month, year or hour." In that case, the statute says, "the average gross weekly wage shall be the gross amount of money earned during the number of calendar weeks so employed, up to a maximum of twenty-six (26) calendar weeks immediately preceding the date of the accident, divided by the number of weeks employed." That is exactly the formula employed by the administrative law judge and approved by the director and district court.

In support of his argument that an agreed rate should control even if never paid, claimant cites *Wilson v. Moridge Mfg.*, Inc., 2 Kan.App.2d 374, 579 P.2d 725 (1978). In that case the claimant's work week was four 10-hour days at an hourly rate of $3.90. The examiner, director, and district court computed the average gross weekly wage to be $156 by multiplying $3.90 by 40 hours. This court held that the district court erred in not computing claim-

ant's average gross weekly wage in accordance with the then applicable provisions of K.S.A. 1974 Supp. 44-511(b)(4), governing hourly employees. The wage was to be determined as follows:

"(i) A daily money rate shall first be found by multiplying the straight-time hourly rate applicable at the time of the accident, by the customary number of working hours constituting an ordinary day in the character of work involved; (ii) the straight-time weekly rate shall be found by multiplying the daily money rate by five (5) . . . ."

Computed strictly according to the statute, claimant's daily money rate was $39 ($3.90 x 10 hours), and his straight-time weekly rate was $195 ($39 x 5 days). There was thus included in the weekly wage a salary for a fifth day which was not actually worked.

There are two reasons *Wilson* is not applicable here. First, it dealt with the specific statutory formula covering hourly employees; claimant here is not an hourly employee. Second, the legislature amended the act after *Wilson* to provide that the daily money rate for hourly employees should be multiplied by the number of days customarily worked, rather than by five. L.1979, ch.156, § 9. The effect of the amendment was to eliminate consideration of "phantom" wages such as were involved in *Wilson* and to make clear that the average wage was limited to wages actually received.

Under the various subsections of 44-511(b), regardless of the time period or other method by which the employee's "fixed" compensation is computed, there is added to that figure any "additional compensation" and overtime, so that the average gross weekly wage reflects money actually received. This prevents basing compensation on an artificially low rate when the employee actually is paid more than the "fixed" rate. The other side of that coin is presented here — the "fixed" rate is artificially high, with the amount actually received being less. Consistent application of the statute requires that compensation be based on the amount received in either case.

We recognize that there may be cases where an employer is prevented by circumstances from paying the full amount of wages agreed upon in an arms-length transaction and intended to be paid. Our holding is limited to the case where the contract, as demonstrated by the practice of the parties, calls for wages in

whatever amount is available to the employer, up to a stated maximum. In such a case the amount actually received is the basis for computing the average gross weekly wage, as held below.

Affirmed.