(756 P.2d 1104)
No. 60,629

DEBRA WILLIAMS, *Claimant-Appellee*, v. EXCEL CORPORATION, *Respondent-Appellant*, and THE WORKERS' COMPENSATION FUND, *Appellee/Cross-appellant*.

Opinion filed January 7, 1988.

*David J. Rebein* and *Michael A. Doll*, of Mangan, Dalton, Trenkle, Rebein & Doll, Chartered, of Dodge City, for appellant.

*Ken W. Strobel*, of Williams, Larson, Strobel, Estes & Malone, P.A., of Dodge City, for appellee.

*Richard L. Friedeman*, of Conner, Opie & Friedeman, of Great Bend, for Kansas Workers' Compensation Fund.

Before BRAZIL, P.J., SIX, J., and JACK L. BURR, District Judge, assigned.

*Per Curiam:* This is a workers' compensation case in which Excel Corporation (Excel) appeals from the district court's finding that Debra Jean Williams suffers from a 100% permanent partial disability and from the court's refusal to assess the entire award to the Workers' Compensation Fund (Fund). The Fund cross-appeals the district court's award and its assessment of any portion of the award to the Fund.

Williams was first employed by Excel, then doing business as MBPXL, in Wichita, Kansas, in November 1976. Medical records indicate that in September 1977, Williams developed pain, weakness, and numbness in her right hand. The treating physician at that time, Bernard T. Poole, M.D., suspected that Wil-

liams was suffering from right carpal tunnel syndrome and placed her right hand in a brace which kept her away from work for approximately twelve days. After that period Williams reported no symptoms and was released to return to work.

On November 14, 1977, Excel filed a "Form 88" with the Division of Workers' Compensation listing Williams as a handicapped employee with an impairment described as "carpal tunnel right." Williams left the employ of MBPXL in November 1977.

Williams was rehired by Excel on November 28, 1983, and performed duties as a meat trimmer at the Dodge City plant. Her work duties consisted of removing a piece of meat from a conveyor belt with a hook held in her left hand, trimming the meat with a knife held in the right hand, and returning the trimmed meat to the conveyor belt. In January 1984, Williams complained of swelling and aching in her hands, which was later diagnosed to be bilateral carpal tunnel syndrome.

Surgery was performed on Williams' right hand in July 1984, and six to eight weeks later she returned to work described as light duty. Williams terminated her employment with Excel in August 1985 and returned to Wichita.

Following a hearing before the Administrative Law Judge (ALJ), findings were entered holding that the Form 88 filed six years prior to the present injury did not prove knowledge of any prior handicap, and an award for a 50% permanent partial disability was assessed against Excel. This award was affirmed by the Workers' Compensation Director.

This matter was presented to the Ford County District Court and that court entered a finding that Williams was 100% permanently partially disabled. The district court further found that, by virtue of the filing of the Form 88, Excel received the benefit of the statutory presumption of knowledge that it had hired a handicapped person, and assessed 75% of the award against Excel and the remaining 25% against the Fund. A timely appeal was filed by Excel, and the Fund timely cross-appealed.

The appeals filed in this matter present two issues for determination by this court. The first issue is the contention of Excel that the district court's finding of 100% permanent partial disability is not supported by substantial competent evidence. The

second issue presented is the contention by both Excel and the Fund that the district court improperly applied the provisions of K.S.A. 44-567.

On July 1, 1985, all appeals from agency actions became subject to the Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.*, unless specifically exempted by statute. K.S.A. 1986 Supp. 77-603. It is not disputed that the Workers' Compensation Act is subject to the provisions of the KJRA.

Excel contends that this court is granted the power to reweigh the evidence under K.S.A. 77-623 and that this court should in effect make its own determination as to the issues of fact. This point is not well taken. K.S.A. 77-621 limits the scope of judicial review of administrative agency decisions and provides in subsection (c):

"The court shall grant relief only if it determines any one or more of the following:

. . . .

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

"(8) the agency action is otherwise unreasonable, arbitrary or capricious."

K.S.A. 77-621 codified the existing case law on review of agency decisions and provides that the court may substitute its judgment on questions of law. On disputed issues of fact, the well-established rule concerning this court's scope of review has not changed, and that scope of review was most recently stated in *Baxter v. L. T. Walls Constr. Co.*, 241 Kan. 588, 591, 738 P.2d 445 (1987). This court must view the evidence in the light most favorable to the prevailing party and determine whether there is substantial competent evidence to support the findings of the trial court.

The testimony of three orthopedic surgeons was placed before the district court, with the testimony of all three indicating that Williams suffered from carpal tunnel syndrome in the right hand. The testimony of Dr. Tyrone D. Artz indicates his opinion that Williams had a recurrent right carpal tunnel syndrome, a left carpal tunnel syndrome, and a snapping of the right thumb and

left middle and ring fingers. It was the opinion of Dr. Artz that a person with carpal tunnel syndrome should be permanently restricted from knife work such as that being performed by Williams. The testimony before the district court from Dr. George L. Lucas differed somewhat from the testimony of Dr. Artz; however, there was agreement that a patient with carpal tunnel syndrome in one hand was more likely to develop it in the other hand. All of the medical testimony indicated that repetitive gripping and twisting can aggravate and possibly cause carpal tunnel syndrome, and all medical testimony indicated that the recommendation would be that a patient with the syndrome not perform the type of duties claimant was performing at the time of her injury.

The record does not indicate any testimony specifically stating that Williams had sustained a 100% permanent partial disability; however, Dr. Artz rated Williams' total permanent functions impairment to the body as a whole at thirteen percent.

"The distinction between functional disability and work disability had been accepted by this court in most instances without explanation. Functional disability is the loss of part of the total physiological capabilities of the human body. Work disability is that portion of the job requirements that a workman is unable to perform by reason of an injury. Work disability generally carries a higher percentage of disability than functional disability." *Anderson v. Kinsley Sand & Gravel, Inc.*, 221 Kan. 191, 195, 558 P.2d 146 (1976).

The evidence in this case, when reviewed in a light most favorable to Williams, indicates sufficient evidence to support the district court's finding of a 100% permanent partial disability.

Both Excel and the Fund contend that the district court improperly applied the provisions of K.S.A. 44-567. Excel argues that the responsibility for all compensation and benefits to Williams should be assessed against the Fund because "but for" the previous occurrence of Williams' carpal tunnel syndrome, her present injury to her hands would not have occurred. K.S.A. 44-567(a)(A).

The record shows that, although she denied any previous injury, Williams had previously been diagnosed as suffering from carpal tunnel syndrome. Although the record contains evidence that a carpal tunnel injury predisposes one to such injuries, there is nothing indicating that "but for" the previous

problem, Williams' current carpal tunnel syndrome would not have occurred.

Williams and Dr. Lucas testified that Williams had been symptom-free before her employment in 1983, and Dr. Lucas stated that the type of activity performed by Williams alone can result in the injury. Dr. Poole was the only witness asked whether "but for" her preexisting carpal tunnel problem Williams would have had the syndrome seven years later, and he could not make such a judgment. The district court was correct in not applying K.S.A. 44-567(a)(A).

K.S.A. 44-567(a)(B) provides:

"[W]henever a handicapped employee is injured or is disabled or dies as a result of an injury and the director finds that the injury probably or most likely would have been sustained or suffered without regard to the employee's preexisting physical or mental impairment but the resulting disability or death was contributed to by the preexisting impairment, the director shall determine in a manner which is equitable and reasonable and based upon medical evidence the amount of disability and proportion of the cost of award which is attributable to the employee's preexisting physical or mental impairment, and the amount so found shall be paid from the workers' compensation fund."

The Fund argues that the district court's assessment of 25% against the Fund and 75% against Excel was not based on medical evidence. We agree.

There was ample testimony that a carpal tunnel injury could be aggravated by returning to the same type of duty, but there was no testimony that Williams' previous problem contributed to her present injury. Dr. Poole testified that Williams suffered from right carpal tunnel syndrome in 1977, but he released her to return to work symptom free and had not seen her since that time.

Although Williams' right hand first had been diagnosed in 1977 and Dr. Artz later diagnosed a present bilateral involvement, Dr. Artz testified that he could not tell which of Williams' hands had become involved first or whether there had been a previous injury. Dr. Artz also testified that a "normal" person doing Williams' work could develop bilateral carpal tunnel syn-

drome within ten days to two weeks. Dr. Lucas testified that the type of work alone could have caused Williams' injury.

The medical testimony agreed that a previous injury could aggravate or contribute to the present injury, but none of the testimony could say that it did. Williams, as mentioned above, does not recall her first injury. The burden was on Excel to establish the extent Williams' preexisting impairment contributed to her resulting disability. *Scott v. Day and Zimmerman, Inc.*, 215 Kan. 782, 788, 529 P.2d 679 (1974). Excel did not meet this burden, and there should be no assessment against the Fund.

The Fund also contends that Excel's Notice of Handicap, Disability or Physical Impairment did not prove that Excel had knowledge of Williams' handicap when it employed her. In light of the findings above, that Excel failed to meet its burden establishing that there was a preexisting impairment which contributed to the present disability, this question is not relevant.

The district court's finding of 100% permanent partial disability is affirmed, the assessment of 25% against the Workers' Compensation Fund and 75% against Excel is reversed, and this case is remanded with directions to assess 100% against Excel.