No. 63,278

KANSAS STATE DEPARTMENT OF SOCIAL AND REHABILITATION SERV-
ICES, *Appellant,* v. PATRICIA J. GOERTZEN, Administratrix of
the Estate of ALBERT E. GOERTZEN, Deceased, *Appellee.*

(783 P.2d 1300)

Opinion filed December 8, 1989.

*Michael George,* of Department of Social and Rehabilitation Services, of
Topeka, argued the cause, and *Pamela Cater,* of the same agency, was with
him on the briefs for appellant.

*Malcolm G. Copeland,* of Topeka, argued the cause and was on the brief
for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is a direct appeal by the Kansas State
Department of Social and Rehabilitation Services (SRS) from the
decision by the district court on September 8, 1988, awarding

Albert Goertzen $146,278 in back wages for the period following his demotion on August 9, 1971, until his death on January 10, 1981, for the failure to provide him a due process hearing. This case was previously before this court in *Goertzen v. State Department of Social & Rehabilitation Services*, 218 Kan. 313, 543 P.2d 996 (1975). On December 13, 1975, this court remanded the case in order for the civil service board (Board) to hold a due process hearing to consider the reasonableness of the demotion and to take "other appropriate action." This hearing was finally conducted on November 6, 1986. The Board found the demotion reasonable but awarded $25.35 in damages for failure to provide a timely due process hearing. On appeal, the district court calculated damages based upon the wages Albert Goertzen would have earned from the time of the violation of his due process rights by failure to provide a hearing until the time of his death almost ten years later.

The background facts of this case are fully set out in our previous opinion and will be summarized and updated for purposes of this appeal. Goertzen had been an employee of the State of Kansas since about 1965. He was appointed supervisor of vocational rehabilitation at Larned State Hospital on April 1, 1970, and was granted permanent status in that position on July 1, 1970. His employee evaluation ratings prior to December 1, 1970, were satisfactory or higher. Subsequent to that time, he received two unsatisfactory ratings. On August 6, 1971, after being first notified he, was to be dismissed from state employment effective July 28, 1971, he was advised that, because of these two unsatisfactory ratings, he would be demoted to the position of Psychologist I at Larned State Hospital, effective August 9, 1971. Because Goertzen did not report for work after August 9, his employment with the state was terminated effective August 17, 1971. 218 Kan. at 314-15.

In his prior appeal, this court held that, because Goertzen failed to appear for work, his dismissal was proper. 218 Kan. at 319. The court further held, however, that a civil service employee with a permanent status who is demoted with loss of pay is not required to remain on the job in the demoted position to test the reasonableness of the demotion action by an appeal to the civil service commission. 218 Kan. at 319-21. Although the

trial court's judgment upholding Goertzen's dismissal was affirmed, the case was "remanded with directions to the trial court to remand the proceeding to the civil service commission for a hearing on the reasonableness of [Goertzen's] demotion and other appropriate action." 218 Kan. at 321.

Upon remand, the Board did not hear testimony about the reasonableness of Goertzen's demotion. Instead, it ruled that the appeal regarding the demotion was not filed in a timely manner and, if the foregoing decision was not sustained, that any damages would be limited to lost wages and benefits between the dates of demotion on August 9, 1971, and termination on August 17, 1971. The district court rejected the finding of the Board regarding the timeliness of the appeal, noting that no limited appeal period was in effect at the time of the demotion here. The district court again remanded the matter to the Board for a due process hearing upon the reasonableness of the demotion in accordance with the decision of the Kansas Supreme Court and for a determination of damages. Following this remand order, SRS attempted to appeal, but the appeal was dismissed by the Court of Appeals because no appellate jurisdiction existed since the matter had been remanded to the administrative body. The decision by the Court of Appeals was issued on April 3, 1986, more than a decade after this court's decision. Furthermore, Albert Goertzen had died on January 10, 1981, and the administratrix of his estate had entered an appearance in this case.

Finally, on November 6, 1986, fifteen years after he was demoted, the Kansas Civil Service Board heard argument and took evidence regarding the reasonableness of the demotion. In its order, the Board found that the demotion was reasonable but awarded damages in the amount of $25.35 for the failure to provide a timely due process hearing. These damages were reached by prorating the difference in salary between the position Goertzen held and the position to which he was demoted for the period from August 9, 1971, which was the effective date of his demotion, until August 17, 1971, which was the date of his termination. Included in the total damages of $25.35 was 6% interest on the prorated sum from August 9, 1971, until January 10, 1981, the date of Goertzen's death.

On review, the district court concluded that the reasonableness of the demotion was moot because no hearing was afforded before Goertzen's death. The court noted the facts are not controverted and the parties agree that the accrual of any damages ceased at the time of death. The court held that the decision of the Board awarding damages in the amount of $25.35 was contrary to the evidence presented at the administrative hearing and contrary to the law. The trial court concluded that, based upon the findings in *Goertzen*, 218 Kan. at 320, and *Wertz v. Southern Cloud Unified School District*, 218 Kan. 25, 542 P.2d 339 (1975), the appropriate damages were the salary Goertzen would have earned from his position prior to demotion until the time of his death. Using this analysis, and based upon a memorandum prepared by a personnel management specialist of SRS personnel service, which was admitted into evidence at the administrative hearing, the amount Goertzen would have earned from the date of his demotion until the time of his death was $146,278. Interest would be incurred at the statutory rate from the date each payment became due in accordance with K.S.A. 16-201. In explaining its rationale for calculating these damages, the court noted the inordinate amount of time since the previous decision by this court in 1975. After reviewing the record, the court concluded that both parties were in part responsible for the delay, but a substantial amount of interest and damages accumulated because the original decision of the Kansas Supreme Court was not followed and was continuously resisted by the Department of Social and Rehabilitation Services.

We must first determine if the district court, in awarding back wages beyond the date of dismissal, violated the prior decision of this court. In the original appeal of this case, this court concluded that dismissal of Goertzen on August 17, 1971, was proper pursuant to K.A.R. 1-11-2 (revoked May 1, 1979) because he did not report to duty or provide an explanation for his absence. 218 Kan. at 315. Because the dismissal was proper, SRS argues that damages cannot be awarded beyond this date of termination. SRS argues that Goertzen is entitled to nothing more than the difference between the amount of pay he received as a supervisor and what he would have received for the job offered; furthermore, this amount is to be calculated from the date of demotion to his

termination, a period of eight days. SRS argues that our prior decision in *Goertzen* precluded the trial court from awarding damages beyond the dismissal date. We do not agree.

In making this argument, SRS fails to recognize that this court held that a civil service employee, like Goertzen, who has permanent status and is demoted with loss of pay, "is not required to remain on the job in the demoted position in order to test the reasonableness of the demotion action by an appeal to the civil service commission." 218 Kan. at 321. SRS argues that the damages awarded by the trial court were for an improper dismissal, and fails to address the violation of Goertzen's procedural due process rights by the failure to provide a hearing before the Board. This hearing was never conducted during Goertzen's life.

The trial court relied upon the decision in *Wertz*, 218 Kan. 25, in determining the damages that should be awarded for the failure to provide due process to Goertzen at the time of his demotion. SRS attempts to distinguish *Wertz* from this case are not persuasive. In *Wertz*, the teacher sought money damages against a school district for his mid-year dismissal without a due process hearing. In reviewing the damages in *Wertz*, the court stated: "A teacher whose employment is rightfully or wrongfully terminated in mid-year, but without a fair hearing, is entitled to back pay from the date of his discharge until a due process hearing is afforded or until the contract for that current year has expired." 218 Kan. at 33. Although the parties stipulated to the damages in *Wertz*, that does not distinguish this case. The offer of the lower-paying position does not require acceptance to mitigate damages because, as this court previously held, Goertzen was not required to accept that job to test the reasonableness of the demotion.

SRS contends that the district court gave no consideration to the final sentence of the above quote from *Wertz* which, according to SRS, was an indication by this court that some factors could intervene to limit plaintiff's damages. SRS argues that such a factor was this court's decision that Goertzen was properly dismissed. We do not agree.

This court, in the prior appeal, held that the procedure to terminate employment based upon unfitness was separate and distinct from a K.A.R. 1-11-2 proceeding to terminate for abdi-

cation of a job. In holding that Goertzen had not waived his right to appeal from the demotion by not remaining on the job, this court said:

"Aside from the amendment just noted it appears that procedural due process rights of a permanent civil service employee with respect to his demotion were required at the pertinent time by statute and administrative regulations, the command of which was not followed here in that appellant was denied a hearing before the civil service board (now the civil service commission). The reason given for the refusal to hear the matter on the merits was that by his resignation under KAR 1-11-2 appellant had waived his right to any hearing. We think that regulation is inapplicable to the situation here. The demotion became effective August 9, 1971, while appellant was still an employee and his right to appeal from that action accrued at that time. We know of no reason why an employee should be required to remain on the job in order to test the reasonableness of a demotion with loss of pay and none has been suggested. (It may be noted more than four years have now elapsed since the demotion action here was taken.) Our holding is that a civil service employee with permanent status who is demoted with loss of pay is not required to remain on the job in the demoted position in order to test the reasonableness of the demotion action by an appeal to the civil service commission." 218 Kan. at 320-21.

Justice Schroeder, in his dissenting opinion, joined by Justices Owsley and Prager, pointed out that, when a civil service employee with permanent status is demoted, his permanent status is terminated. Therefore, failure to report to work at the demoted position is immaterial to the determination of his fitness to hold the position in which he held permanent status.

Goertzen's permanent status was terminated by his being demoted. Procedural due process requires that he have a hearing before SRS demoted him. From the standpoint of determining damages for being denied due process, it is immaterial that he refused to accept the demotion and was subsequently dismissed from the demoted position pursuant to K.A.R. 1-11-2. This court determined that Goertzen had been denied due process as to his demotion and remanded the case for a hearing on the reasonableness of his demotion and other appropriate action. His dismissal from the demoted position was not relevant in determining the extent of his damages for being denied due process, nor is it a factor that would limit his damages. We find the action taken by the trial court did not violate the decree of this court in the original appeal.

SRS argues, however, that no damages can be awarded in this case because the original demotion of Goertzen was found to be reasonable. In its decision following the hearing finally provided in 1986, the Board concluded that the demotion on August 9, 1971, was reasonable. In reviewing this decision, the district court did not address the reasonableness of the demotion because it found the issue became moot after Goertzen's death on January 10, 1981. The parties agree that he was not afforded a due process hearing prior to his death and that accrual of any damages ceased with his death.

SRS argues that the court improperly awarded back wages, although it called them damages, by using projected earnings to calculate the damages awarded. Furthermore, because the Supreme Court found the termination to be proper, because the Board found the demotion to be reasonable, and because the district court found the question of reasonableness of the demotion to be moot, SRS argues that "its [sic] impossible to imagine why the Board and the district court awarded damages." According to SRS, the court's award cannot be compensatory because no injury or damage was suffered. Finally, SRS theorizes that the Board's award of $25.35 was nominal damages, which were improper because no legal wrong occurred.

The arguments by SRS again concentrate upon the reasonableness of the demotion without addressing the violation of Goertzen's procedural due process rights in failing to provide a hearing before the Board. This was also one of the reasons for remanding the case. 218 Kan. at 320. The decision by the trial court on September 8, 1988, which awarded damages in the amount of $146,278 with interest, was based upon the failure to provide the hearing ordered in the 1975 decision by this court. Instead of assuring that a hearing was conducted promptly, SRS repeatedly fought the hearing. This was clearly a factor in the trial court's decision to award these damages. Although the court noted that both parties had some responsibility for delays, it emphasized that substantial interest and damages would have been averted if the original order of this court had been followed.

The trial court concluded that the award of $25.35 in damages by the Board was contrary to the evidence presented at the administrative hearing and was arbitrary and capricious. This

amount was reached by prorating the difference between the monthly salary of the job held by Goertzen prior to his demotion and the lower paying job offered to him. In setting this amount, the Board appeared to ignore the earlier finding by this court that Goertzen did not have to accept the lesser job.

In reaching the decision determining the amount of damages, the trial court reviewed a statement of the wages Goertzen would have earned if he had continued in his initial employment. Based upon the decision in *Wertz*, the trial court was correct in calculating damages from the date of his demotion and the denial of the due process hearing until the due process hearing was afforded or it became unavailable as a method of reinstatement. Subsequent to Goertzen's death, reinstatement was impossible. Therefore, the date of his death was the appropriate time for the termination of the calculation of damages for violation of his constitutional right to a due process hearing.

Damages cannot be awarded when the evidence is too conjectural or speculative to form a sound basis for their measurement. *Hoard v. Shawnee Mission Medical Center*, 233 Kan. 267, 277, 662 P.2d 1214 (1983). On the other hand, the inability to calculate damages with absolute exactness does not render them too uncertain to preclude their award. *Vickers v. Wichita State University*, 213 Kan. 614, 619, 518 P.2d 512 (1974). SRS does not contest the calculations the court made from the memorandum presented by the personnel management specialist of SRS personnel services. In using the back pay that Goertzen would have received if he had continued to be employed in the position prior to his demotion, the court relied upon the decision in *Wertz*, which awarded back pay from the date of the teacher's discharge until a due process hearing was held or expiration of the contract.

SRS argues that it should not be punished for arguing that the appeal from the denial of demotion was not timely made. If the argument would have been successful, then the case would have been barred. Although SRS was certainly entitled to make this argument even after the decision by the Kansas Supreme Court, its decision to advocate this strategy included a risk that it would lose and then be responsible for additional damages from the continuing failure to provide Goertzen with the due process to which he was entitled in August of 1971. Having decided to

pursue this argument, SRS cannot now be relieved of its obligations because it maintained a position, including an appeal to the appellate courts of Kansas, that was not meritorious, meanwhile making Goertzen wait for his due process hearing.

These damages are awarded for SRS's continuing refusal to acknowledge the right of an individual to receive a due process hearing prior to the demotion or termination even if the grounds for demotion or termination are reasonable. The importance of this right at the time of the deprivation was emphasized in the following statement by the United States Supreme Court in *Fuentes v. Shevin*, 407 U.S. 67, 81-82, 32 L. Ed. 2d 556, 92 S. Ct. 1983 (1972):

> "If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented. At a later hearing, an individual's possessions can be returned to him if they were unfairly or mistakenly taken in the first place. Damages may even be awarded to him for the wrongful deprivation. But no later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred. 'This Court has not . . . embraced the general proposition that a wrong may be done if it can be undone.' *Stanley v. Illinois*, 405 U.S. 645, 647 [31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972)]."

The Court also addressed the effect the ultimate outcome had on the application of due process:

> "Their ultimate right to continued possession was, of course, in dispute. If it were shown at a hearing that the appellants had defaulted on their contractual obligations, it might well be that the sellers of the goods would be entitled to repossession. But even assuming that the appellants had fallen behind in their installment payments, and that they had no other valid defenses, that is immaterial here. The right to be heard does not depend upon an advance showing that one will surely prevail at the hearing. 'To one who protests against the taking of his property without due process of law, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits.' *Coe v. Armour Fertilizer Works*, 237 U.S. 413, 424 [, 59 L. Ed. 1027, 35 S. Ct. 625 (1915)]. It is enough to invoke the procedural safeguards of the Fourteenth Amendment that a significant property interest is at stake, whatever the ultimate outcome of a hearing on the contractual right to continued possession and use of the goods." 407 U.S. at 87.

Justice Fromme, speaking for this court in *Wertz*, addressed a similar argument raised by the school board:

"The school board has argued that the trial in the district court amounted to a due process hearing in which the court found justifiable cause for termination. The thrust of the argument being that such a determination removes any liability of the board for wages after the wrongful termination of the contract. We cannot agree. Constitutional due process in this case required a hearing by the school board before the discharge. The trial in district court was brought by the teacher to enforce his property right which we have determined was violated and which gave rise to the action in the district court. The district court's decision denying relief was based upon the faulty premise that the issue presented was limited to whether the discharge was justifiable. Instead, the issue presented to the court was whether the board had violated a protected right to constitutional due process." 218 Kan. at 32-33.

SRS also argues that the trial court abused its scope of review in setting new damages. Although SRS discusses the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.*, this statute was not enacted until 1984 and, therefore, does not apply to this case that arose in 1971. Instead, the scope of review to be used is described in *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, 450, 436 P.2d 828 (1968), as follows:

"A district court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a matter of law, the tribunal acted fraudulently, arbitrarily or capriciously, whether the administrative order is substantially supported by evidence, and whether the tribunal's action was within the scope of its authority."

In reviewing a decision by a district court regarding an administrative ruling, an appellate court may substitute its judgment on questions of law but, on disputed issues of fact, the appellate court must " 'view the evidence in the light most favorable to the prevailing party and determine whether there is substantial competent evidence to support the findings of the trial court.' " *Reeves v. Equipment Service Industries, Inc.*, 245 Kan. 165, 173, 777 P.2d 765 (1989) (quoting *Williams v. Excel Corp.*, 12 Kan. App. 2d 662, 664, 756 P.2d 1104 [1988]). "Substantial evidence" is that evidence "which possesses something of substance and relevant consequence, and which furnishes a substantial basis of fact from which the issues tendered can reasonably be resolved." *Foote*, 200 Kan. at 459.

The trial court found the Kansas Civil Service Board acted arbitrarily and capriciously because determining damages in the amount of $25.35 was contrary to the law and to the evidence presented at the administrative hearing. Furthermore, in light of the prior decision by this court in this case, awarding damages just for the time between demotion and termination was arbitrary and capricious. Damages accumulate until a due process hearing is conducted or an external force terminates the contract. Goertzen's employment contract was not for a specific amount of time, as was the teacher's in *Wertz*. Instead, Goertzen's employment as supervisor should have continued indefinitely until terminated as required by law. As this court noted, termination could occur either by an involuntary method of termination of employment after a hearing upon charges of unfitness for a particular job, K.S.A. 75-2949, or by abdication of the job under K.A.R. 1-11-2. *Goertzen*, 218 Kan. at 318. Abdication as to the demoted position, however, did not correct the deficiency in failing to provide a hearing at the time of the demotion. On the other hand, Goertzen's death in January of 1981 was an appropriate time to end accumulation of damages for the failure to allow the due process hearing.

SRS, having opposed a due process hearing for over 11 years, is in no position to argue that a miscarriage of justice will occur if damages accrue during that time. Civil service tenure was developed to guarantee protection of the property interests created through continued employment. See *Wertz*, 218 Kan. at 29-30. In determining damages for violation of the Fourteenth Amendment's procedural protection of property, examining the amount of pay one would have received is appropriate. The trial court found that the Board acted arbitrarily and capriciously by merely awarding $25.35 in damages for the failure to provide a due process hearing for 10 years while Goertzen was alive and for a total of 18 years in this case. The record contains substantial evidence to support the decision of the trial court. Terminating calculation of damages with the death of Goertzen was reasonable. The trial court did not abuse its scope of review in determining that the award by the Board was arbitrary and capricious.

Finally, SRS makes a rather disjointed argument that the district court erred in holding SRS liable for damages between the

1975 decision by this court and the 1986 due process hearing conducted by the Kansas Civil Service Board because the Board did not conduct a due process hearing. Instead, on April 7, 1978, the Board granted SRS's motion and dismissed the case on grounds that the appeal of the demotion decision was not filed in a timely manner. This occurred three years after the Supreme Court remanded the case to conduct a hearing to determine the reasonableness of the demotion and "other appropriate action." This "other appropriate action" included determining the effect of the failure to provide a due process hearing prior to the demotion.

The district court, in its decision of September 8, 1988, concluded that the Board's decision in April of 1978, which held that the appeal had not been pursued in a timely manner, had no basis because no time limitation was violated. SRS is the party that proposed and pursued this issue. When the district court, on May 22, 1984, reversed the dismissal by the Board and remanded the case for the hearing that had been ordered by this court in 1975, SRS once again resisted the hearing and appealed to the Court of Appeals. It was only after the Court of Appeals again remanded the case for the same hearing originally ordered in 1975 that the hearing was conducted.

SRS mistakenly believes that the district court is imposing damages for the erroneous decision by the Board in April of 1978. In fact, the district court was imposing damages for the failure to provide a due process hearing at the time of the demotion in 1971, which was one of the reasons for remanding in 1975. SRS continues to refuse to recognize that a due process violation occurred, apparently not understanding that Goertzen had a right to a due process hearing *before* his demotion. This constitutional violation resulted in the damages awarded by the district court. SRS is not being punished for the decision by the independent Board; instead, Goertzen is being compensated for SRS's failure to conduct a due process hearing, which he was originally entitled to receive in August of 1971. SRS states in its brief that the case has been in litigation for 17 years, and laments:

"This prolonged litigation has caused SRS undue hardship and greatly prejudiced SRS in its attempt to defened [*sic*] this action. This prejudice has resulted from a predictable lack of continuity in the SRS legal staff, which

has caused the case to be passed from one attorney to another. SRS would like to see this case decided for all time."

No doubt Goertzen would have wanted this case decided in his lifetime. It is SRS that has consistently argued that Goertzen was not entitled to a hearing before he was demoted. If just one of the many SRS attorneys to whom this case was passed would have recognized that Goertzen had a constitutional right to a due process hearing, this "prolonged litigation" would have ended.

SRS's perception that it is being punished for the decision of the Board is based upon a misconception of the effect of zealously representing one's client. In deciding whether to pursue a particular issue in litigation, the litigant must consider its effect upon the case. Here, the zealous representation by SRS attorneys did not result in a prompt resolution of the problem, but delayed the hearing an additional 11 years. As a result, SRS, not Goertzen, should be responsible for the damages that accrued during the delay.

SRS also argues that it has some kind of immunity to the damages awarded by the district court. In support of this argument, it relies upon K.S.A. 46-901 (Weeks), enacted in 1970 and repealed July 1, 1979. This statute provided, in part, as follows:

"(a) It is hereby declared and provided that the following shall be immune from liability and suit on an implied contract, or for negligence or any other tort, *except as is otherwise specifically provided by statute*:

"(1) The state of Kansas.

. . . .

"(c) The state of Kansas and all boards, commissions, departments, agencies, bureaus and institutions . . . shall, in all express contracts, written or oral, with members of the public, give notice of such immunity from liability and suit." (Emphasis added.)

The provisions of K.S.A. 46-901 were repealed when the Kansas Tort Claims Act, K.S.A. 75-6101 *et seq.*, became effective on July 1, 1979. SRS argues that the Tort Claims Act is inapplicable to this case because it applies prospectively, and that prior to the Kansas Tort Claims Act and the decision by this court in *Gorrell v. City of Parsons*, 223 Kan. 645, 576 P.2d 616 (1978), a government agency was "not liable for the negligent acts of its officers or employees in the performance of a governmental func-

tion, unless such liability [was expressly imposed by law]." 223 Kan. at 647.

The Kansas Legislature specifically provided for government liability here. The Kansas Civil Service Act was enacted in 1941 "to provide all citizens a fair and equal opportunity for public service; to establish conditions of service which will attract officers and employees of character and ability; and to increase the efficiency and economy of the governmental departments and agencies by the improvement of methods of personnel administration." *Goertzen*, 218 Kan. at 316. The provisions of this statute created a department of administration, K.S.A. 75-3702 (Weeks 1969) (now K.S.A. 75-3702a), and authorized the director of this department to establish and promulgate rules and regulations with respect to the exercise of the department's powers and duties. K.S.A. 75-3706. 218 Kan. at 316. The Act gave the executive director power to recommend rules and regulations to implement the Civil Service Act, including issues involving standards of performance, leaves of absence with or without pay, transfers, layoffs, vacations, hours of work, and other conditions of employment. K.S.A. 75-3746(7) (Weeks 1969) (now K.S.A. 75-3746[8]); 218 Kan. at 317.

By creating a civil service law that granted permanent status to a state employee, the Kansas Legislature gave the employee an interest in continued employment that the state cannot infringe arbitrarily. Thus, as this court noted in the earlier *Goertzen* appeal:

"One of the purposes of civil service laws is to take from the appointing officer the right of arbitrary removal of an employee. This privilege not to be subjected to arbitrary removal should extend as well to demotion, especially where loss of pay is involved and indeed our statutes do so recognize this right." 218 Kan. at 320.

Pursuant to the provisions of K.S.A. 75-2929 (Weeks 1969) (now K.S.A. 1988 Supp. 75-2929d) as enacted in 1941, the Kansas Civil Service Board was required to hear appeals regarding complaints by or against any employee concerning a demotion.

By enacting the Kansas Civil Service Act, the Kansas Legislature expressly imposed by law a duty upon the state to treat its citizens fairly and equally in regard to public service. Thus, the state was not immune from suit for irregularities under the

Kansas Civil Service Act, which resulted in a violation of Goertzen's right to due process of law.

The judgment of the district court is affirmed.

SIX, J., not participating.

MCFARLAND, J., dissenting.